BRYSON, Circuit Judge.
 

 Vernon L. Ramey served in the United States Army during the Second World War and was exposed to ionizing radiation at Nagasaki, Japan, following the detonation of an atomic bomb there. In January 1980, Mr. Ramey died of cancer. His widow, appellant Alma L. Ramey, subsequently filed an application for dependency and indemnity compensation with the Department of Veterans Affairs (“DVA”). The DVA denied her application. After exhausting her administrative remedies, she appealed to the United States Court of Veterans Appeals, which upheld the denial of her claim for compensation. We affirm.
 

 I
 

 Mr. Ramey was in the Army from April 1945 through January 1947. He was aboard the U.S.S. General S.D. Sturgis when it departed from Seattle, Washington, on October 18,1945, en route to Japan. On November 2, 1945, the Sturgis reached Nagasaki, Japan, where it anchored. The ship left Nagasaki the next day with Mr. Ramey aboard.
 

 In February 1978, Mr. Ramey was hospitalized with complaints of abdominal pain and indigestion. An X-ray revealed that he suffered from carcinoma of the colon, and a liver scan revealed a “possible hepatoma.” With respect to the liver scan, the examiner indicated in the medical report that it was not “possible to differentiate here between metastatic disease and possible hepatoma, though because there are two lesions [in the liver], metastatic disease is probably more likely.” Mr. Ramey died in January 1980 at the age of 54. His death certificate indicated “carcinoma of colon” as the cause of death.
 

 In August 1989, Mrs. Ramey filed with a DVA regional office (“RO”) an application for dependency and indemnity compensation claiming that her deceased husband had served in Nagasaki shortly after the atomic bombing of that city. The RO asked the Defense Nuclear Agency (“DNA”) to confirm that Mr. Ramey had been exposed to ionizing radiation during his military service. The DNA is the agency within the Department of Defense that serves as the Department’s center for nuclear expertise; its. mission includes researching the effects of nuclear weapons on humans. The DNA’s first report stated that Mr. Ramey did not serve with either the Hiroshima or the Nagasaki forces. Accordingly, the RO denied Mrs. Ramey’s claim.
 

 Upon further investigation, the DNA issued a second report, which confirmed that Mr. Ramey had been aboard the U.S.S. Sturgis and had been in Nagasaki for the one-day period that the ship was anchored there. The DNA report, however, noted that the likely level of exposure to ionizing radiation suffered by U.S. occupation forces in Hiroshima and Nagasaki was low.
 

 After receiving the second DNA report, the RO referred the case to the DVA’s Director of the Compensation and Pension Service for an opinion as to whether Mrs. Ramey’s claim should be allowed. The Director of Compensation in turn requested an opinion from the Chief Medical Director regarding the relationship between Mr. Ramey’s
 
 *1241
 
 cause of death and his military service. A report issued by the Assistant Chief Medical Director concluded that it was “highly unlikely that his disease can be attributed to exposure to ionizing radiation in service.” Referring to an article concerning the health effects of radiation, the report concluded that among Japanese atomic bomb survivors, “no excess of colon cancer” has been discovered at low levels of exposure, and that “risks have increased only after ‘intense irradiation.’ ”
 

 Based on the Medical Director’s report and “following review of the evidence in its entirety,” the Director of Compensation informed the RO that “there is no reasonable possibility that the veteran’s disability was the result of exposure” to ionizing radiation. The RO then denied Mrs. Ramey’s claim. The Board of Veterans’ Appeals affirmed the RO’s denial of the claim on the ground that the preponderance of the evidence was against the claim that the disease that resulted in Mr. Ramey’s death was service connected.
 

 On appeal to the Court of Veterans Appeals, Mrs. Ramey sought to establish service connection in three ways. First, she contended that her husband’s death resulted from liver cancer, a radiogenic disease as to which there is a statutory presumption of service connection.
 
 See
 
 38 U.S.C. § 1112(c)(2)(M). Second, she argued that a DVA regulation, 38 C.F.R. § 3.311, creates a presumption of service connection for veterans who were exposed to radiation at Hiroshima or Nagasaki and who later contracted colon cancer. Finally, she contended that she was entitled to compensation under the general statutory provision granting compensation to surviving spouses for service-connected disabilities suffered by wartime veterans.
 
 See
 
 38 U.S.C. §§ 1110,1541.
 

 The Court of Veterans Appeals rejected each of Mrs. Ramey’s contentions. The court first concluded that the statutory presumption of service connection for liver cancer did not apply, because the “medical evidence of record ... supports the finding that the carcinoma in the veteran’s liver was a result of metastasis from the colon cancer” and that colon cancer was the cause of Mr. Ramey’s death. The court next rejected Mrs. Ramey’s argument that the DVA’s regulation creates a presumption of service connection for certain other radiogenic diseases, including colon cancer. Finally, the court held that the evidence failed to show that Mr. Ramey’s colon cancer was service connected.
 

 II
 

 In this court, Mrs. Ramey presses only one of the three contentions that she raised before the Court of Veterans Appeals — that she is entitled to a presumption of service connection based on a DVA regulation. She argues that 38 C.F.R. § 3.311, which was promulgated pursuant to the Veterans’ Dioxin and Radiation Exposure Compensation Standards Act, Pub.L. No. 98-542, 98 Stat. 2725 (1984) (“the Radiation Compensation Act”), creates a presumption of service connection for veterans, such as her husband, who were exposed to ionizing radiation in service and contracted certain radiogenic diseases, including colon cancer, within specified periods after their exposure. Under the regulation, she contends, a presumption of service connection should have been invoked once she showed that her husband was exposed to radiation at Nagasaki and developed colon cancer more than five years after his exposure. Her claim should have been granted based on the presumption of service connection, she argues, because the DVA did not rebut the presumption by adducing affirmative evidence of a more likely cause for her husband’s disease.
 

 A
 

 In analyzing whether the DVA regulation creates a presumption of service connection for radiation-exposed veterans who contract certain radiogenic diseases, we must first address Mrs. Ramey’s argument that the Radiation Compensation Act required the DVA to create such a presumption by regulation. We conclude that the statute did not require the creation of a presumption of service connection.
 

 1
 

 The Radiation Compensation Act was enacted in response to concerns that veterans
 
 *1242
 
 who were exposed to dioxin or ionizing radiation during their service were having difficulty supporting their claims for compensation.
 
 See
 
 130 Cong. Rec. 13,147-49 (1984) (statement of Sen. Cranston). Prior to the Act, veterans had to proceed under the general compensation provisions, which require proof that the disease in question was incurred in the service.
 
 See
 
 38 U.S.C. §§ 1110, 1154(a); 38 C.F.R. § 3.303. In the ease of claims based on radiogenic diseases, claimants had to show that the particular veteran’s disease resulted from in-service exposure to ionizing radiation. Veterans and their survivors who attempted to establish direct service connection were seldom successful under that regime because of the severe difficulties of proof, including the lack of ready access to scientific and medical evidence about the long-term effects of radiation exposure and the lack of reliable information about exposure levels. In addition, there was great inconsistency in the way radiogenic-disease claims were addressed by the agency’s various regional offices.
 
 See
 
 H.R.Rep. No. 98-592, at 7 (1984),
 
 reprinted in
 
 1984 U.S.C.C.A.N. 4449, 4453; 130 Cong. Rec. 13,-147-49 (1984) (statement of Sen. Cranston).
 

 Congress enacted the Radiation Compensation Act to address these problems and, more generally, to “ensure that Veterans’ Administration disability compensation is provided to veterans who were exposed during service in the Armed Forces ... for all disabilities arising after that service that are connected, based on sound scientific and medical evidence, to such service.” § 3, 98 Stat. at 2727. The Act recognized that the Veterans Administration (now the DVA) had not promulgated “permanent regulations setting forth specific guidelines, standards, and criteria for the adjudication of claims” for compensation based on exposure to ionizing radiation and that “[s]uch claims ... present adjudicatory issues which are significantly different from issues generally presented in claims based upon the usual types of injuries incurred in military service.” § 2(11), (12), 98 Stat. at 2726.
 

 Although the Act described the goals it sought to achieve, it did not create a statutory mechanism for achieving those goals. Instead, it directed the DVA to adopt regulations to serve the broad statutory purposes and “to promote consistency in claims processing and decisions.” § 5(a), 98 Stat. at 2727. The Act further directed the agency to make determinations of service connection in individual cases, “based on sound medical and scientific evidence” and giving the benefit of any doubt to the claimant. § 5(b)(2)(A)(i), 98 Stat. at 2728.
 

 Mrs. Ramey argues that the Radiation Compensation Act must be interpreted as directing the DVA to create a presumption of service connection for radiation-exposed veterans who contract certain radiogenic diseases. We disagree. The Act makes no reference to a presumption of service connection, and there is no textual basis from which to conclude that the statute mandates that the DVA create such a presumption by regulation.
 

 Section 5 of the Act, which sets forth the “requirement for and content of regulations,” simply directs the DVA to “establish guidelines and (where appropriate) standards and criteria” for resolving benefit claims relating to exposure to radiation and dioxin. § 5(a)(1), 98 Stat. at 2727. It does not provide that the guidelines must incorporate a presumption of service connection with respect to any disease or combination of circumstances. Instead, it directs the DVA to conduct a study to identify radiogenic diseases and “make determinations,” with respect to each such disease, as to “whether service connection shall ... be granted in the adjudication of individual eases.” § 5(b)(2)(A)(i), 98 Stat. at 2728. If the DVA decides “that service connection shall be granted” in the case of diseases that the DVA has determined to be radiogenic, the statute further directs that the regulations must provide that “in the adjudication of individual cases, service connection shall not be granted where there is sufficient affirmative evidence to the contrary,” or evidence that the veteran’s condition was the product of an intervening injury or disease, “or that the disability is due to the veteran’s own willful misconduct.” § 5(b)(2)(A)(ii), 98 Stat. at 2728. The statute further provides that, with respect to any disease the statute designates as radiogenic
 
 *1243
 
 or the DVA determines should be regarded as radiogenic, the regulations must specify “the factors to be considered in adjudicating issues relating to whether or not service connection should be granted in individual eases and the circumstances governing the granting of service connection for such disease.” § 5(b)(2)(A)(iii), 98 Stat. at 2728.
 

 The statutory text makes it clear that the Radiation Compensation Act does not create a presumption of service connection for radiation-exposed veterans who contract radiogenic diseases, nor does it direct the DVA to create any such presumption by regulation. In particular, the statement in section
 
 5 of
 
 the Act that certain items must be included in the regulations “[i]f the Administrator [now the Secretary] makes a determination” to grant service connection in the case of a particular disease, § 5(b)(2)(A)(ii), 98 Stat. at 2728, is a clear indication that the statute left to the agency the task of determining whether or not to grant service connection.
 
 See LeFevre v. Secretary, Dep’t of Veterans Affairs,
 
 66 F.3d 1191, 1193 (Fed.Cir.1995). That point is underscored in the succeeding subparagraph, in which the Act directs the DVA to include the factors to be considered in deciding “whether or not service connection should be granted in individual cases.” § 5(b)(2)(A)(iii), 98 Stat. at 2728.
 

 2
 

 The legislative history of the Radiation Compensation Act confirms that the Act did not create, or mandate the creation of, a presumption of service connection for any radiogenic disease. The Act was the product of a compromise between House and Senate bills that differed dramatically in their approach to the subject of claims based on radiogenic diseases. The House bill established a presumption of service connection for radiation-exposed veterans who contracted one of three identified diseases. The Senate bill on the other hand, did not create a presumption of service connection for any radiogenic disease, but authorized the agency to create such presumptions by regulation if, after studying the scientific evidence, the agency concluded that such a presumption was appropriate.
 
 See
 
 129 Cong. Rec. 19,966-69 (1983); H.R.Rep. No. 98-592, at 11 (1984),
 
 reprinted in
 
 1984 U.S.C.C.A.N. 4449, 4457.
 

 The compromise agreement, the text of which was ultimately enacted, granted temporary benefits to veterans who were exposed to dioxin, as provided in the House bill. With respect to radiation-exposed veterans, however, it largely tracked the Senate bill. In particular, the compromise agreement followed the Senate approach by requiring the agency to determine “whether service connection shall be granted in the adjudication of individual cases involving certain diseases,” and “to specify in the regulations the factors to be considered in the adjudication of individual claims ... and the circumstances ... governing granting of service connection for those diseases.”
 
 Explanatory Statement of Home Bill, Senate Amendment, and Compromise Agreement,
 
 130 Cong. Rec. 29,551, 29,553 (1984),
 
 reprinted in
 
 1984 U.S.C.C.A.N. 4470, 4474. Contrary to Mrs. Ramey’s argument, there is nothing in the contemporaneous comments of the sponsors of the Act to suggest that Congress intended to adopt a presumption of service connection for any radiogenic disease or to require the agency to do so by regulation.
 
 See, e.g.,
 
 130 Cong. Rec. 13,148 (1984) (statement of Sen. Cranston) (agency will be required to decide “whether ... any presumptions as to service connection should be applied in the case of certain specified disabilities”);
 
 id.
 
 at 13,160 (statement of Sen. Cranston) (“Administrator must articulate ... whether the named diseases will be service connected”);
 
 id.
 
 at 29,944 (statement of Sen. Simpson) (decision as to service connection “is done on an individualized, case-by-case basis, which the act would not change in any way”).
 

 In two subsequent statutes, Congress took different approaches to the creation of presumptions of service connection for particular diseases. The differences in approach support the conclusion that Congress did not intend to create any such presumptions in the 1984 Act. Thus, in the Radiation-Exposed Veterans Compensation Act of 1988, Congress expressly established a “presumption of service connection” for a variety of radiogenic diseases (although not for colon
 
 *1244
 
 cancer).
 
 See
 
 Pub.L. No. 100-321, 102 Stat. 485 (1988) (codified at 38 U.S.C. § 1112(c)). Subsequently, in the Agent Orange Act of 1991, Congress took a middle ground position and directed the DVA to evaluate the available medical and scientific evidence and to determine whether certain diseases were associated with exposure to herbicides.
 
 See
 
 Pub.L. No. 102-4, 105 Stat. 11 (1991) (codified at 38 U.S.C. § 1116). Congress directed that if the DVA found such an association, it should “prescribe regulations providing that a presumption of service connection is warranted.” 38 U.S.C. § 1116(b)(1). The contrast between the 1984 Act and those two later statutes confirms that the Radiation Compensation Act did not of its own force create a presumption of service connection for any radiogenic disease and did not direct the DVA to create any such presumption by regulation.
 

 B
 

 We next turn to the question whether the DVA regulation at issue, 38 C.F.R. § 3.311, creates a presumption of service connection for radiation-exposed veterans who contract one of the radiogenic diseases listed in the regulation. Based on the text of section 3.311, its consistent interpretation by the agency, and the congressional understanding of its effect, we reject Mrs. Ramey’s contention that section 3.311 gives rise to a presumption of service connection for claims falling within its scope.
 

 1
 

 Section 3.311, which the agency promulgated following the enactment of the Radiation Compensation Act, establishes a procedure for dealing with claims brought by radiation-exposed veterans or their survivors. When it is determined that a veteran was exposed to ionizing radiation during service and developed a radiogenic disease within a specified period after exposure, the regulation provides that the claim will be referred to the DVA’s Under Secretary for Benefits.
 
 See
 
 38 C.F.R. § 3.311(b)(1). The regulation currently identifies 22 forms of cancer as radiogenic diseases.
 
 See
 
 § 3.311(b)(2).
 

 Following the referral, the Under Secretary for Benefits is.directed to consider the claim with reference to a specified set of factors that bear on the issue of causation, including the probable dose of radiation experienced, the veteran’s age, gender, and family history, the sensitivity of the involved tissue to induction of the specific pathology by ionizing radiation, and the extent to which exposure to radiation or other carcinogens outside of service may have contributed to development of the disease. 38 C.F.R. § 3.311(e). If the Under Secretary for Benefits is convinced that sound scientific and medical evidence supports the conclusion that it is at least as likely as not that the veteran’s disease resulted from exposure to radiation in service, the Under Secretary so informs the RO with jurisdiction over the claim. If the Under Secretary determines that there is no reasonable possibility that the veteran’s disease resulted from radiation exposure in service, the Under Secretary advises the RO to that effect.
 

 If the Under Secretary cannot make either determination, the matter is referred to an outside consultant for an opinion as to the likelihood that the disease is a result of in-service exposure to radiation. 38 C.F.R. § 3.311(c). When a ease is referred to an outside consultant, the consultant must determine whether it is likely, unlikely, or approximately as likely as not that the veteran’s disease resulted from exposure to radiation in service. The consultant’s analysis is then forwarded to the RO along with any comments the Under Secretary for Benefits may wish to add. § 3.311(d).
 

 The RO then determines the issue of service connection under the general service connection regulations, giving due consideration to all evidence of record, including the DVA’s evaluation of studies relating to health effects of exposure to radiation, and resolving any reasonable doubt .in favor of the claimant. 38 C.F.R. § 3.311(f). As dictated by the statute, the regulation further provides that service connection will not be established “if the disease is due to the veteran’s own willful misconduct, or if there is affirmative evidence to establish that a supervening,
 
 *1245
 
 nonservice-related condition or event is more likely the cause of the disease.” § 3.311(g).
 

 By identifying particular diseases as radiogenic, the regulation reheves the claimant of the need to show that it is possible that in-service exposure to ionizing radiation may have been a precipitating factor for the disease. Moreover, the regulation centralizes an important part of the process of considering claims based on radiation exposure by requiring the involvement of the Under Secretary for Benefits, thus protecting against inconsistent decisionmaking by different regional offices and giving the veteran the benefit of the most current scientific and medical studies of radiogenic diseases. The process of evaluation under the regulation, however, still requires a case-by-case determination of service connection for each claim based on one of the listed diseases.
 

 Nothing in the language of section 3.311 supports Mrs. Ramey’s contention that the regulation creates a presumption of service connection upon proof of exposure and contraction of a radiogenic disease within a specified time period. The consequence of a claim satisfying those prerequisites is not that the claim is considered presumptively allowable, but that the claim is referred to the Under Secretary for Benefits for evaluation. The claim is then adjudicated in light of all the evidence, “under the generally applicable provisions of [the regulations]” governing service connection. 38 C.F.R. § 3.311(f).
 

 Mrs. Ramey acknowledges that the regulation does not expressly refer to a presumption of service connection, but argues that such a presumption is implicit in the language of the regulation. As the basis for that contention, she points to 38 C.F.R. § 3.311(g), which provides that a finding of service connection will not be made if the veteran’s disease was caused by the willful misconduct of the veteran or if there is affirmative evidence that some supervening, non-service-related condition or event is more likely the cause of the disease.
 

 That argument is unconvincing. Section 3.311(g) ensures that even if the ease for service connection is otherwise made out, proof of willful misconduct or a supervening cause will defeat the claim. But the inclusion of section 3.311(g) in the regulation does not mean, as Mrs. Ramey argues, that absent proof of willful misconduct or a supervening cause, service connection must be taken as established whenever a radiation-exposed veteran contracts a radiogenic disease within the period specified in the regulation. If the evidence does not otherwise justify a finding of service connection, it is not even necessary to turn to the disqualifying categories of section 3.311(g).
 

 2
 

 In addition to the text of the regulation, there is powerful extrinsic evidence that section 3.311 does not create a presumption of service connection for the listed diseases. When the DVA first promulgated what is now section 3.311, it discussed the contents of the regulation and made clear that the regulation was creating a framework for adjudicating the issue of service connection on a case-by-case basis, not creating a presumption of service connection for each identified radiogenic disease.
 
 See
 
 50 Fed.Reg. 15,848, 15,850 (1985) (the regulation “is designed to ensure fairness to claimants and consistency and accuracy in the adjudication of radiation exposure claims”);
 
 id.
 
 at 15,851 (“The VA considers proper claims resolution to require a balancing of these factors [specified in section 3.311(e) ] on a case-by-case basis.”);
 
 see also
 
 50 Fed.Reg. 34,452, 34,457 (1985) (assigning specific weights to the factors for evaluating claims would not “afford VA the flexibility necessary to take into account facts unique to each claim”).
 

 Several years later, after the enactment of the 1988 Act, the DVA through its general counsel set out the agency’s view that while the 1988 Act established presumptions of service connection for certain listed diseases, the 1984 Act did not. With respect to the 1984 Act, the general counsel wrote: “Congress avoided designating specific diseases as being presumptively service connected and instead addressed the process by which VA was then considering compensation claims of radiation-exposed veterans.” Department of Veterans Affairs, Op. Gen. Counsel 9-90. The general counsel then added: “In spite of being given
 
 *1246
 
 discretion to decide if any of the named diseases should be accorded presumptive service-connected status in the new regulations (section 5(b)(A)(i) of the Act), the VA elected not to do so in favor of the case by case consideration of radiation claims for diseases it listed in 38 C.F.R. § 3.311b [now section 3.311].” Op. Gen. Counsel 9-90.
 

 These statements by the agency interpreting its own regulation at the time of its adoption and shortly thereafter provide strong support for the government’s argument in this case because, “[a]s the Supreme Court has frequently observed, an administrative agency’s interpretation of its own regulations is entitled to great deference.”
 
 Krizman v. Merit Sys. Protection Bd.,
 
 77 F.3d 434, 439 (Fed.Cir.1996). In fact, an agency’s interpretation of its own regulation is “of controlling .weight unless it is plainly erroneous or inconsistent with the regulation.”
 
 Bowles v. Seminole Rock & Sand Co.,
 
 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945);
 
 see also Martin v. Occupational Safety & Health Review Comm’n,
 
 499 U.S. 144, 150-51, 111 S.Ct. 1171, 1175-76, 113 L.Ed.2d 117 (1991);
 
 Lyng v. Payne,
 
 476 U.S. 926, 939, 106 S.Ct. 2333, 2341-42, 90 L.Ed.2d 921 (1986).
 

 3
 

 Not only has the DVA consistently interpreted section 3.311 in the manner urged by the government, but that interpretation is supported by the enactment of the Radiation-Exposed Veterans Compensation Act of 1988,
 
 supra,
 
 and by the legislative history accompanying that statute. As we have noted, the 1988 Act created a statutory presumption of service connection for radiation-exposed veterans who contracted any one of 13 forms of cancer, most of which were already listed in the version of section 3.311 then in effect. If section 3.311 already contained a presumption of service connection for the radiogenic diseases listed in the regulation, as Mrs. Ramey argues, the statutory presumption created by the 1988 Act would be largely redundant.
 

 Even more significantly, the bill that ultimately became the 1988 Act initially included colon cancer as one of the diseases for which a statutory presumption of service connection would be created. Because colon cancer is strongly associated with dietary factors and is prevalent in the general, non-radiation-exposed population, Congress omitted colon cancer from the list of diseases that were accorded a presumption of service connection in the 1988 statute.
 
 See
 
 134 Cong. Rec. 8584 (1988) (statement of Sen. Cranston). If Congress had regarded the list of diseases in 38 C.F.R. § 3.311 as presumptively service connected, it would have been pointless to omit colon cancer from the list of diseases as to which there would be a statutory presumption of service connection under the 1988 Act.
 

 Any doubt as to Congress’s understanding of the effect of section 3.311 is put to rest by the congressional analysis of the 1984 Act and the DVA regulation that is reflected throughout the legislative history of the 1988 Act. The Senate report that led to the enactment of the 1988 Act noted that the 1984 Act did not. create rules of presumptive service connection, but simply sought to ensure “significant improvement in the way in which the VA compensation system handled claims based on radiation exposure,” in the hope that “such changes might obviate the need for legislation providing for presumptive compensation.” S.Rep. No. 100-215, at 98 (1987). Congress’s goal in the 1984 Act, the report explained, was “for the VA to make clear, rational, on-the-record determinations,' regarding the procedures and standards for handling radiation claims and to ensure that a consistent approach would be followed throughout the VA.”
 
 Id.
 
 Directly addressing the question presented in this case, the report then explained that “the VA elected not to provide compensation on a presumptive basis for any of the cancers listed in that law.”
 
 Id.
 

 Statements by the House sponsors of the 1988 legislation reflect a similar recognition that the 1988 Act would be extending a presumption of service connection to radiogenic diseases for the first time.
 
 See
 
 133 Cong. Rec. 21,306 (1987) (statement by Rep. Apple-gate) (notwithstanding the VA regulations “giving special consideration to the adjudication of individual claims based on radiation exposure,” it remains “very difficult today for
 
 *1247
 
 a veteran to establish that his or her disability was caused by radiation exposure”; therefore, “the establishment of a presumption would appear to be the only means, given the present state of scientific and medical knowledge, upon which service connection may be granted for these disabilities”);
 
 id.
 
 at 21,307 (statement of Rep. Hammerschmidt) (“This bill would for the first time establish presumptions of service connection for some disabilities known to be associated with exposure to ionizing radiation”);
 
 id.
 
 (statement of Rep. Solomon) (“[t]he time has come for presumptive compensation for our atomic veterans”). The consistent interpretation of section 3.311 by both the DVA and Congress confirms our conclusion that the regulation does not create a presumption of service connection for radiation-exposed veterans who subsequently contract a listed disease, such as colon cancer.
 

 4
 

 Mrs. Ramey does not address any of the foregoing guideposts to the proper interpretation of section 3.311. Instead, the main thrust of her argument on appeal is that section 3.311 must be deemed to create a presumption of service connection because this court has previously said that it does. In
 
 Combee v. Brown,
 
 34 F.3d 1039 (Fed.Cir.1994), the court was presented with the question whether a veteran who suffers from a disease not listed in 38 C.F.R. § 3.311 can establish direct service connection by proceeding outside the regulatory scheme of section 3.311. Answering that question in the affirmative, the court held that veterans “retain the opportunity to show direct service connection by establishing direct actual causation.”
 
 Combee v. Brown,
 
 34 F.3d at 1044. The court noted that “this route includes the difficult burden of tracing causation to a condition or event during service.”
 
 Id.
 
 at 1043. A veteran who suffers from a disease not listed in section 3.311 must carry the burden of proof without the benefit of the DVA’s expertise and “sound scientific” findings and conclusions.
 

 The
 
 Combee
 
 court then stated that a veteran “can also establish service connection presumptively under the Radiation Compensation Act.” 34 F.3d at 1043. Under that route, the court stated, “[e]xposure alone, as a result of atmospheric testing or service in Hiroshima or Nagasaki, qualifies a veteran suffering from a
 
 listed
 
 disease that has become manifest within a certain latency period, for presumptive service connection.”
 
 Id.
 
 The court also stated that “[i]n essence, the list lifts the burden of proving direct service connection and provides exposed veterans with sound scientific evaluations of the radiogenicity of their diseases.”
 
 Id.
 

 The court was correct that there is a presumption of service connection for radiation-exposed veterans who contract certain radiogenic diseases, but the presumption arises from the Radiation Exposed Veterans Compensation Act of 1988, not the Radiation Compensation Act of 1984. The diseases as to which there is a presumption of service connection are therefore those listed in the 1988 Act,
 
 see
 
 38 U.S.C. § 1112(c)(2), not those listed in the regulation promulgated under the 1984 Act,
 
 see
 
 38 C.F.R. § 3.311.
 

 It is also true that claimants who fall within the coverage of the Radiation Compensation Act regulation enjoy certain benefits not available to claimants, such as Mr. Combee, who seek to prove direct service connection without the benefits of that regulation. Under the regulation, a claimant with a listed disease does not have to establish that his disease could have been caused by exposure to radiation, and the claimant’s case is automatically referred to the Under Secretary for Benefits for review. Moreover, the claimant is not required to produce evidence consistent with the claim of exposure if military-records are not inconsistent with the claim.
 
 See
 
 38 C.F.R. § 3.311(a)(4). And, under the regulation, the DVA will obtain dose information for the claimant from the Department of Defense or an independent expert, and when dose estimates are reported as a range, exposure at the highest level of the reported dose range will be presumed. § 3.311(a). But the benefits enjoyed by claimants under section 3.311 do not include a presumption of service connection that is automatically triggered by proof that a radiation-exposed veteran contracted a radiogenic disease within a time period specified in the regulation.
 

 
 *1248
 
 It may be that the court in
 
 Combee
 
 used the term “presumption of service connection” to refer to the procedural advantages enjoyed by claimants who establish that they are entitled to have their claims processed under section 3.311. For example, because under section 3.311(e)(i) a claimant is entitled to a favorable disposition by the Under Secretary for Benefits if “sound scientific and medical evidence supports the conclusion that it is at least as likely as not the veteran’s disease resulted from exposure to radiation in service,” the claimant’s procedural advantage in that circumstance can be referred to as a presumption, although it is not what is usually termed a “presumption of service connection.”
 
 See
 
 38 U.S.C. § 1112 (certain diseases presumed service connected if the veteran develops them within a specified period after leaving the service); 38 C.F.R. §§ 3.307-3.309 (same);
 
 Collette v. Brown,
 
 82 F.3d 389, 392 (Fed.Cir.1996) (“presumption of service connection” does not encompass all statutory or regulatory provisions that lighten the burden on a veteran attempting to prove service connection).
 

 To the extent that the
 
 Combee
 
 court may have used the term “presumption of service connection” in that limited manner, the court’s analysis is consistent with ours. To the extent, however, that the court meant to characterize section 3.311 as creating what is more conventionally referred to as a presumption of service connection,
 
 ie.,
 
 a rule that proof of contraction of a particular disease within a specified time period establishes service connection in the absence of affirmative proof to the contrary, we take a different view of the regulation. In any event, the court’s characterization of the regulation was unnecessary to the decision in
 
 Combee,
 
 since the only question presented was whether a radiation-exposed veteran who did not suffer from a disease listed in section 3.311 could nonetheless attempt to establish his claim by proving direct service connection. The court’s statement that the regulation creates a presumption of service connection was therefore dictum, and after careful consideration of the court’s opinion and the pertinent statutory and regulatory materials, we decline to adopt that characterization as a holding of this court. Instead, we agree with the Court of Veterans Appeals that section 3.311, like the 1984 Act on which it is based, does not create any presumption of service connection, as that term is normally employed in this context.
 

 Ill
 

 The procedures that. the DVA followed in this case were in accordance with the dictates of the Radiation Compensation Act and the regulation promulgated pursuant to that Act. The RO, upon receipt of the second DNA report, made a determination that Mrs. Ramey satisfied the threshold requirements of section 3.311 and forwarded the claim to the Director of the Compensation and Review Service for review as directed by the version of section 3.311 that was then in effect. After analysis by that officer and by the Chief Medical Director, the RO denied Mrs. Ramey’s claim. Because the agency found “no reasonable possibility” that Mr. Ramey’s colon cancer was the result of his in-service exposure to radiation, it was unnecessary for the RO to address whether the disease was the product of any supervening cause.
 
 See
 
 38 C.F.R. § 3.311(g).
 

 Apart from contending that she was entitled to a presumption of service connection under the regulation, Mrs. Ramey has not challenged the correctness of the DVA’s decision that her husband’s disease was not service connected. Because we conclude that Mrs. Ramey was not entitled to a presumption of service connection under 38 C.F.R. § 3.311, we hold that the Court of Veterans Appeals was correct in affirming the denial of her claim.
 

 AFFIRMED.