Hazel R. WANDEL, Appellant,

v.

Togo D. WEST, Jr., Acting Secretary of Veterans Affairs, Appellee.

No. 94–1110.

United States Court of Veterans Appeals.

Argued March 25, 1998.

Decided April 7, 1998.

Sean A. Ravin, Rockville, MD, for appellant.

Mary Ann Flynn, with whom Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel, Washington, DC, were on brief, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and IVERS, Judges.

NEBEKER, Chief Judge:

The appellant, Hazel Wandel, appeals an August 18, 1994, decision of the Board of Veterans' Appeals (BVA or Board) which denied service connection for the cause of the veteran's death due to exposure to ionizing radiation. Upon consideration of the record on appeal and the briefs of the parties, the Court will affirm the Board's decision for the following reasons.

## I. FACTS

The veteran, Gene Simmons, served on active duty in the U.S. Navy from January 1946 to November 1947. Record (R.) at 44, 53. His service records reflect that he was stationed aboard the U.S.S. *Shangri–La* as a seaman whose duties included routine shipboard maintenance. R. at 44–45, 142. The Defense Nuclear Agency (DNA) has also confirmed that he participated in Operation CROSSROADS, which was a series of atmospheric nuclear weapon detonations conducted at Bikini Atoll in 1946. R. at 142–45. Operation CROSSROADS is recognized by VA as an "operational period" in which onsite participation entitles veterans to presumptive service connection for several specified conditions. 38 U.S.C. § 1112(c); *see also* 38 C.F.R. § 3.309(d)(3) (1997). "Onsite participation" is defined as "presence at the test site, or performance of official military duties in connection with ships, aircraft or other equipment used in direct support of the nuclear test." 38 C.F.R. § 3.309(d)(3)(iv)(A).

In November 1967, at the age of 39, the veteran died. R. at 57. His death certificate listed the cause of death as aspiration pneumonitis due to cerebral hyper-pressure due to a metastatic brain tumor. *Id.* At the time of his death, the veteran was not service connected for any disability. In October 1988, Hazel Wandel, the veteran's widow, requested Dependency and Indemnity Compensation (DIC), arguing that her husband was exposed to ionizing radiation while in service. R. at 61. Her claim was denied in a June 1989 VA regional office (RO) decision (R. at 86), after which she submitted a Notice of Disagreement (R. at 91). A Statement of the Case (SOC) was prepared and sent to the appellant in November 1989. R. at 95–99. In May 1990, the appellant's daughter stated that she believed her father's death was due to his exposure to radiation during service. R. at 106–09. Also submitted were private medical records from the Baptist Memorial Hospital where the veteran had been treated prior to his death. R. at 113–32. The hospital report included the following history:

This 39 year old white male ... was first seen in November 1956 for skin cancer of the right side of the nose, which was re-

ferred to a dermatologist. He was again seen on February 21, 1967 postop with the diagnosis of malignant [melanoma] which was removed from the posterior chest by Dr. George Tippit.... The patient was seen August 2, 1967 with complaint of headache which has continued this month.... The patient continued to complain of headache and difficulty with memory, difficulty adding columns of figures, difficulty deciding on sizes of letters to be used in signs [at work], and other higher cerebral function problems.

R. at 114. In August 1990, VA requested that the DNA confirm the veteran's presence and the nature of his duties at the nuclear tests, and provide the "recorded level of his radiation exposure," if available. R. at 140. The DNA responded with the following statement:

A careful search of dosimetry data reveals no record of radiation exposure for Mr. Simmons. However, a scientific dose reconstruction indicates that Mr. Simmons would have received a probable dose of zero rem gamma. No upper or lower error bounds are available for this dose.

A scientific dose reconstruction titled *Neutron Exposure for DoD Nuclear Test Personnel* (DNA–TR–84–405, available at your facility) indicates that due to the distances of Mr. Simmons' unit from the two CROSSROADS detonations, he had virtually no potential for exposure to neutron radiation.

R. at 142. Also forwarded from the DNA was a history of the *Shangri–La*'s activities during Operation CROSSROADS, and an Executive Summary from a National Academy of Sciences report which summarized the methods used to obtain dose estimates, and addressed the accuracy of the radiation exposure information provided. R. at 144–49. Copies of these reports were allegedly furnished to the appellant. *See* R. at 143.

Under the provisions of 38 C.F.R. § 3.311(b), the veteran's claims folder was forwarded to the advisory review staff of the VA Compensation and Pension Service, which then requested an opinion from the Chief Medical Director. R. at 151, 153. Dr. Susan Mather, the Assistant Chief Medical Director for Environmental Medicine and Public Health, noted the DNA dose estimate, discussed characteristics of malignant melanoma, and opined that "[t]he veteran's dose, if any ionizing radiation were received, was much lower than the cited value [suspected of causing malignant melanomas] and it is highly unlikely that his disease can be attributed to exposure to ionizing radiation in service." R. at 157. Based in part on the opinion of Dr. Mather, the Director of Compensation and Pension Services stated, "[I]t is our opinion that there is no reasonable possibility that the veteran's disability was the result of such exposure." R. at 159. In June 1991, an RO decision confirmed the previous denial of service connection for the cause of the veteran's death. R. at 161. A Supplemental SOC (SSOC) was issued. R. at 163–66. Mrs. Wandel and her representative responded, arguing that the DNA's dose estimate was incorrect, that Dr. Mather's opinion failed to address the veteran's skin cancer which had been treated in 1956, and that Dr. Mather's opinion regarding the relationship between skin cancer and radiation exposure was "not correct." R. at 168, 170–71.

A June 1993 BVA decision concluded that additional development was necessary. R. at 188–91. Referencing VA's duty to assist, the Board remanded the claim in order to allow the RO to obtain records from the 1956 cancer treatment, and any other documents possibly related to the veteran's exposure to ionizing radiation. R. at 190. The Board further stated that:

[I]f it is shown that the veteran had malignant melanoma treated earlier than 1966 (i.e., in November 1956 or earlier), a VA oncologist or dermatologist should review the veteran's *claims folder* and render an opinion with reasons as to whether the malignant melanoma in 1966 arose separately from or was a recurrence of any earlier malignant melanoma.

*Id.* (emphasis in original). The National Personnel Records Center responded to VA's request for additional records by stating that all records had been previously forwarded. R. at 196. Thereafter, VA requested that Mrs. Wandel "furnish all treatment records

for [her] husband for skin problems from service discharge until his death." R. at 198. No records predating the veteran's 1966 treatment were received. *See* R. at 200, 201–27. However, a duplicate copy of the August 1967 history which reported the 1956 skin cancer was included. *See* R. at 208. Following review of the newly submitted materials, the RO issued a confirmed rating decision, and forwarded another SSOC. R. at 259, 261–65. In October 1993, Mrs. Wandel requested that the case be forwarded to the Board for a decision. R. at 271. In a written submission to the Board, her representative argued that the directives in the Board's June 1993 remand order had not been accomplished, specifically that no additional medical opinion or dose estimate had been obtained. R. at 273–74.

In the August 1994 BVA decision here on appeal, the Board denied the appellant's claim for service connection for the cause of the veteran's death, finding first that the claim was well grounded, and that VA had fulfilled its duty to assist. R. at 8. The Board further determined that the presumptive provisions of 38 U.S.C. § 1112(c) and 38 C.F.R. § 3.309(d) did not apply. R. at 9–10. In addressing the evidence, the Board noted that "the 1956 skin cancer of the right side of the nose was reported only by history in August 1967, without its type being indicated," and that no additional medical records pertaining to that treatment had been received by VA. R. at 11, 13. The Board emphasized that,

> Since the 1956 records were not obtained, it is uncertain whether the veteran actually had skin cancer at that time and what type it was, and it voided the further contingent order that an opinion from an oncologist be obtained to determine whether the fatal 1966 malignant melanoma was related to it.

R. at 13. The Board also noted that the appellant had "taken issue with the dose estimate arrived at by the DNA," but stated that no other estimate had been supplied by the appellant, as she was entitled to do. R. at 12. Finally, the Board addressed the appellant's concerns regarding the opinion of Dr. Mather, and concluded that the opinion

and Dr. Mather's analysis were acceptable. R. at 14. Specifically, the Board stated

> A careful review of the statement of the Assistant Chief Medical Director for Environmental Medicine indicates that she discounts the new study showing a possible association between exposure to ionizing radiation, in part because of the doses indicated, and in part because the study was discounted in the medical literature and a later study showed no such association. She was well aware of the dose estimate for the veteran.

R. at 14.

On appeal to this Court, Mrs. Wandel argues that remand is necessary because VA breached its duty to assist in (1) failing to provide "sufficient disclosure" of how the DNA dose estimate was derived; (2) failing to "notify the appellant of the existence of information critical to the DNA, [failing to] collect that information that would support appellant's contention, and [failing to] provide that information that was critical of the DNA for grossly underestimating radiation dose exposure"; and (3) failing to collect or account for the missing medical records from the alleged 1956 skin cancer. Appellant's Brief (Br.) at 9–14. Mrs. Wandel asserts that the Board's treatment and citation of medical evidence requires a remand, and she also argues that VA committed error in failing to inform the appellant of evidence (i.e., how the DNA dose reconstruction was accomplished) on which it would base its determination, and giving her the opportunity to respond. *See Thurber v. Brown,* 5 Vet.App. 119 (1993); Br. at 14–16. Finally, at oral argument, counsel for the appellant argued that the factors enumerated in 38 C.F.R. § 3.311(e) were inadequately addressed, and thus, remand is required.

The Secretary asserts that there is a plausible basis in the record for the Board's denial of service connection, and that the decision should therefore be affirmed. At oral argument, counsel for the Secretary argued that, absent evidence establishing exposure of the veteran to radiation, the adjudication provisions of section 3.311 are inapplicable. Moreover, counsel noted that without medical evidence in the record pro-

viding a nexus between the cause of the veteran's death and his military service, the appellant has failed to present a well-grounded claim.

## II. ANALYSIS

### A. Radiation Claims

Section 3.311, title 38 of the Code of Federal Regulations, was promulgated pursuant to the Veterans' Dioxin and Radiation Exposure Compensation Standards Act, Pub.L. No. 98–542, 98 Stat. 2725 (1984) ("the Radiation Compensation Act"), which "was enacted in response to concerns that veterans who were exposed to ... ionizing radiation during their service were having difficulty supporting their claims for compensation." *Ramey v. Gober*, 120 F.3d 1239, 1241–42 (Fed.Cir. 1997), *cert. denied*, —— U.S.——, 118 S.Ct. 1171, 140 L.Ed.2d 181 (1998); *see also* 130 Cong. Rec. 13,147–49 (1984). Section 3.311 provides that "[i]n all claims in which it is established that a radiogenic disease first became manifest after service ..., and it is contended the disease is a result of exposure to ionizing radiation in service, an assessment will be made as to the size and nature of the radiation dose or doses." 38 C.F.R. § 3.311(a)(1). Subsection (a)(2)(i) instructs that "[i]n claims based upon participation in atmospheric nuclear testing, dose data will in all cases be requested from the appropriate office of the Department of Defense." Thus, in claims for service connection involving exposure to radiation, the Secretary has established a procedure through which VA undertakes to determine the degree, if any, of radiation exposure. Once it is determined that:

(i) A veteran was exposed to ionizing radiation as a result of participation in the atmospheric testing of nuclear weapons....;

(ii) The veteran subsequently developed a radiogenic disease; and

(iii) Such disease first became manifest within the period specified in paragraph (b)(5) of this section;

the claim will then "be referred ... for further consideration in accordance with paragraph (c) of this section." 38 C.F.R.

§ 3.311(b)(1). The United States Court of Appeals for the Federal Circuit discussed the chronological obligations incumbent upon the Secretary under section 3.311 in *Ramey, supra.* Therein, the Federal Circuit stated the following:

Section 3.311, which the agency promulgated following the enactment of the Radiation Compensation Act, establishes a procedure for dealing with claims brought by radiation-exposed veterans or their survivors. *When it is determined that a veteran was exposed to ionizing radiation during service* and developed a radiogenic disease within a specified period after exposure, the regulation provides that the claim will be referred to the DVA's Under Secretary for Benefits. See 38 C.F.R. § 3.311( b)(1).

*Ramey*, 120 F.3d at 1244 (emphasis added). Thus, it appears that a preliminary assessment of exposure to radiation is required before the claim will "be referred ... for further consideration." While under 38 C.F.R. § 3.311(b), skin cancer is considered a "radiogenic disease," 38 C.F.R. § 3.311(b)(2)(iv),(xii),(xiii), there is no evidence to warrant "further consideration," as it has been established that the veteran was not *exposed* to radiation. The claim has thus not passed the initial threshold requirement of establishing exposure to radiation under subsection (a).

 Paragraph (b)(1) requires the preliminary determination that the "veteran was exposed to ionizing radiation." 38 C.F.R. § 3.311(b)(1). "When a claim is forwarded for review pursuant to paragraph (b)(1) of this section, the Under Secretary for Benefits shall consider the claim with reference to the factors specified in paragraph (e) of this section and may require an advisory medical opinion from the Under Secretary for Health." 38 C.F.R. § 3.311(c)(1). Subsection (e) lists "factors to be considered in determining whether a veteran's disease resulted from exposure to ionizing radiation in service." In such an adjudication, "exposure to ionizing radiation" has already been established. While VA referred Mrs. Wandel's claim to the Under Secretary for Benefits for review, it was not required to do so by statute or regulation. *See Ramey*, 120 F.3d

at 1248 ("The RO, upon receipt of the second DNA report [suggesting exposure to ionizing radiation], made a determination that Mrs. Ramey satisfied the threshold requirements of section 3.311 and forwarded the claim to the Director of the Compensation and Review Service for review"). Accordingly, the Court holds that, absent competent evidence that the veteran was exposed to radiation, VA is not required to forward the claim for consideration by the Under Secretary for Benefits to apply the six factors found in subsection (e). The Court notes that, in many cases involving dose estimates, a veteran's exposure is reported as "less than 1 rem," which suggests *some* exposure, and would consequently trigger additional development under section 3.311.

The dose estimate in this case was reported as "zero," and thus no further development was required. That claim development was nevertheless undertaken in the present case, and may have been defective, is harmless error, as Mrs. Wandel's claim was not entitled to additional development beyond a determination that the veteran was not exposed to ionizing radiation. *See* 38 U.S.C. § 7261(b); *see also White v. Brown*, 6 Vet. App. 247, 252 (1994) (where claimant fails to submit new and material evidence to reopen claim under 38 U.S.C. § 5108, Board's *Thurber* error is harmless and does not require remand); *Yabut v. Brown*, 6 Vet.App. 79, 85 (1993) ("failure of the BVA to provide appellant with [*Thurber*-required] notice and an opportunity to respond to the medical treatises superfluously cited in its decision constitutes harmless error").

### B. Well-grounded Claim Requirement for Direct Service Connection

 This Court reviews de novo the question of whether a claim is well grounded. *Grottveit v. Brown*, 5 Vet.App. 91, 92 (1993). "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a). The Court has interpreted this burden as the necessity of submitting a claim that is "a plausible claim, one which is meritorious on its own or

capable of substantiation. Such a claim need not be conclusive, but only possible to satisfy the initial burden of § [5107(a)]." (*Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990)). Where the determinative issue involves either medical etiology or a medical diagnosis, competent medical evidence is required to fulfill the well-grounded-claim requirement; where the determinative issue is factual in nature, lay testimony may suffice by itself. *See Grottveit*, 5 Vet.App. at 93; *Espiritu v. Derwinski*, 2 Vet.App. 492, 494–95 (1992).

 In *Rucker v. Brown*, this Court found well grounded a claim for service connection for several cancers alleged to have been caused by non-ionizing radiation. 10 Vet.App. 67 (1997). There, the Court emphasized that the appellant submitted a medical opinion from the veteran's treating physician which connected his military service to his cancer, and several published articles discussing the scientific theory at issue. *Id.* at 72–74. In *Hardin v. West*, the veteran had two physicians who opined that his medical condition was related to his alleged exposure to ionizing radiation in service. 11 Vet.App. 74 (1998). Here, there is no evidence to provide the requisite medical nexus between the veteran's death and his military service. *See* R. at 106–09, 168, 179. The appellant and her daughter's "lay assertions of medical causation cannot constitute evidence to render a claim well grounded under section 5107(a); if no cognizable evidence is submitted to support a claim, the claim cannot be well grounded." *Grottveit*, 5 Vet.App. at 93; *see also Tirpak v. Derwinski*, 2 Vet.App. 609, 611 (1992). Moreover, if a claim is not well grounded, the claimant cannot invoke the VA's duty to assist in the development of the claim. *See* 38 U.S.C. § 5107(a); *Rabideau v. Derwinski*, 2 Vet.App. 141, 144 (1992).

At oral argument, counsel for the appellant referenced significant information he had discovered in the process of developing this appeal. Even assuming that all of this information is record material before the Secretary (*see* 38 U.S.C. § 7252(b)), the significance of this information concerns the weight and credibility of Dr. Mather's medical opinion and the overall VA claims adjudication

process. In *Rucker*, the Court discussed the "presumption of credibility" afforded to evidence submitted in an attempt to well ground a claim, and further noted that Board determinations regarding the weight and credibility of evidence are inapplicable at that stage of claim adjudication. *Rucker*, 10 Vet.App. at 72–74; *see also King v. Brown*, 5 Vet.App. 19 (1993); *Justus v. Principi*, 3 Vet.App. 510, 513 (1992). Similarly, the appellant's attempt to challenge the weight ascribed to Dr. Mather's opinion must be, or have been, presented at the administrative level. Nevertheless, such information in no way assists the appellant to well ground her claim, which requires the submission of positive medical and scientific evidence. In other words, the discrediting of evidence contrary to the granting of service connection does not serve as evidence that supports service connection.

Finally, the Court views as potentially troublesome the statistics noted by the appellant's counsel during oral argument. However, it is the Court's duty to interpret the law and apply it to the particular case before it, not make policy decisions. Whether the Radiation Compensation Act has accomplished the purpose intended by Congress is not for this Court to decide.

The Court commends the appellant's counsel, who has taken this appeal under the pro bono program. He has performed in the highest tradition of the bar even at the risk that his Freedom of Information Act request to VA may result in personal cost to him, in the absence of a waiver of those charges.

### III. CONCLUSION

On consideration of the record, the pleadings of the parties, and the oral argument, the August 18, 1994, BVA decision is AFFIRMED.