Citation Nr: 1719112 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 11 18-765 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Sioux Falls, South Dakota


THE ISSUES

1. Entitlement to service connection for a left knee disability.

2. Entitlement to service connection for chronic myeloid leukemia.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

Ellen H. Weston, Associate Counsel


INTRODUCTION

The Veteran served on active duty service from November 1978 to January 1983.

This case comes before the Board of Veterans' Appeals (Board) from an April 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Sioux Falls, South Dakota.

In March 2013, the Veteran testified during a Board hearing by videoconference before the undersigned Veterans Law Judge (VLJ). A transcript is of record. 

In July 2014, the Board remanded this case for further clarification regarding the final status of the Veteran's discharge, and in March 2015, an administrative determination confirmed full eligibility for VA compensation.


FINDINGS OF FACT

1. The evidence does not demonstrate that the Veteran has a current left knee disability. 

2. The evidence does not demonstrate that there was an event, injury, or disease related to the Veteran's chronic myeloid leukemia that occurred in service, and the Veteran did not engage in a radiation-risk activity on active duty.


CONCLUSIONS OF LAW

1. The criteria for service connection for a left knee disability have not been met. 38 U.S.C.A §§ 1110, 1101, 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R §§ 3.12, 3.102, 3.104, 3.303, 3.304 (2016).

2. The criteria for service connection for chronic myeloid leukemia, as due to radiation exposure, have not been met. 38 U.S.C.A §§ 1110, 1101, 1112, 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R §§ 3.12, 3.102, 3.104, 3.303, 3.304, 3.307, 3.309, 3.311 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

VA has certain notice and assistance obligations to claimants pursuant to the Veterans Claims Assistance Act of 2000 (VCAA), 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.326(a). VA provided the requisite notice to the Veteran in letters dated February 2011. See Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004); Dingess v. Nicholson, 19 Vet. App. 473, 486 (2006); Barr v. Nicholson, 21 Vet. App. 303, 312 (2007).

VA also has a duty to assist the Veteran to obtain potentially relevant records, and to provide examinations or medical opinions when necessary to make a decision on the claim. Here, the Veteran's service treatment records, VA records, and private treatment records have been obtained and associated with the claims file. The Veteran received VA treatment, and VA examinations in both May 2011 and July 2012 in connection with his claims; which, collectively, contain a description of the history of the disabilities at issue; document and consider relevant medical facts and principles; and provide opinions regarding the Veteran's claimed conditions.

By including in the claims file any outstanding, relevant records regarding the Appellant's status as a Veteran, the character of his discharge, and his period of service, the Agency of Original Jurisdiction (AOJ) has substantially complied with the Board's July 2014 Remand instructions. See D'Aries v. Peake, 22 Vet. App. 97, 104-106 (2008); Stegall v. West, 11 Vet. App. 268 (1998). Additional development is not warranted.

Finally, the Veteran had a March 2013 hearing by videoconference before the Board. The presiding VLJ appropriately conducted the hearing, duly explained the issues, and identified possible sources of evidence, which may have been overlooked or may be advantageous to the claimant's position. Bryant v. Shinseki, 23 Vet. App. 488 (2010); 38 C.F.R. § 3.103(c)(2). As such, VA has satisfied its duties to notify and assist, and there is no prejudice to the Veteran in adjudicating this appeal. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).


II. Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). In order to prevail on the issue of service connection, generally, there must be (1) medical evidence of a current disability; (2) medical evidence, or in certain circumstances, lay evidence of an in-service occurrence or aggravation of a disease or injury; and (3) competent evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); Hickson v. West, 12 Vet App. 247, 253 (1999); Barr v. Nicholson, 21 Vet. App. 303, 306 (2007); Pond v. West, 12 Vet. App. 341, 346 (1999).

Federal law specifically limits entitlement for service-connected disease or injury to cases where such incidents result in a disability. It is not enough for a claimant to seek some sort of benefit simply because he had a disease or injury on active duty. In the absence of proof of a current disability, there can be no valid claim. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); Degmetich v. Brown, 104 F.3d 1328, 1333 (1997) (upholds Court of Appeals for Veterans Claims decision to require a current existing disability).

For certain chronic diseases, a presumption of service connection arises if the disease has manifested to a degree of 10 percent or greater within one year following a veteran's discharge from service. 38 C.F.R. §§ 3.307, 3.309(a). When a chronic disease is not established within one year after service, a chronic disease claim must show a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time, pursuant to 38 C.F.R. § 3.303(b). When the facts do not adequately support chronicity in service, a showing of "continuity of symptomatology" after discharge from service is required. In addition, the theory of "continuity of symptomatology" may only support a claim for the chronic diseases listed under 38 C.F.R. § 3.309(a), which includes all forms of leukemia. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013); Barr, 21 Vet. App. at 307; 38 C.F.R. § 3.303(a).

Competent lay evidence of a condition with "unique and readily identifiable features"... "is capable of lay observation." Barr, 21 Vet. App. at 309; 38 C.F.R. § 3.159 (a)(2); Layno v. Brown, 6 Vet. App. 465, 469 (1994) ("Lay evidence...may provide sufficient support for a claim of service connection"); See Davidson v. Shinseki, 581 F.3d 1313, 1315 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) (considers lay evidence potentially competent to support presence of disability even when not corroborated by contemporaneous medical evidence). 

However, lay persons are not competent to provide opinions on some medical issues outside common knowledge that require specialized education, training, or experience, such as certain complex etiologies and diagnoses. See Jandreau, 492 F.3d at 1377 n.4 (for example, lay persons are not competent to diagnose cancer), Colantonio v. Shinseki, 606 F.3d 1378, 1382 (Fed. Cir. 2010) (recognizing that in some cases lay testimony "falls short" in proving an issue that requires expert medical testimony). Lay evidence regarding a veteran's exposure to radiation may be competent in some circumstances. See Rucker v. Brown, 10 Vet. App. 67, 74 (1997) (peer-reviewed article that linked radiation emitted by naval radar equipment to cancer met evidentiary threshold). 

In general, service connection for cancer that has been claimed to be the result of exposure to radiation during service may be accomplished in one of three ways. Ramey v. Brown, 9 Vet. App. 40, 44 (1996). First, certain diseases may be presumptively service connected if they manifest in a "radiation-exposed Veteran," per statutory definition. 38 U.S.C.A. § 1112 (c)(3)(A); 38 C.F.R. § 3.309 (d)(3)(i). A radiation-exposed Veteran is one who has participated in a "radiation-risk activity." 38 C.F.R. § 3.309 (d)(3)(ii). A radiation-risk activity includes onsite participation in an atmospheric test involving the detonation of a nuclear device; the occupation of Hiroshima or Nagasaki, Japan; internment as a prisoner of war with comparable radiation exposure; or the Veteran's presence at certain specified domestic nuclear sites. Id. The application of this presumption does not require documentation of the level of exposure. Second, direct service connection may be found if the Veteran has a "radiogenic disease," after certain development procedures have been conducted regarding the medical dose assessment for radiation exposure. 38 C.F.R. § 3.311 (b)(2). Third, direct service connection may be established for diseases not listed pursuant to 38 C.F.R. § 3.309(d), or § 3.311, as radiogenic diseases, by showing that the Veteran's disability has been incurred or aggravated by service, including under the presumptive service connection for chronic disease. See Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994); Ramey v. Gover, 120 F.3d 1239 (Fed. Circ. 1997); Hardin v. Brown, 11 Vet App. 74, 77 (1998).

When all such evidence has been assembled, VA is responsible for determining whether the totality of the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event; or whether there is a preponderance of the evidence against the claim, in which case, the claim must be denied.
38 U.S.C.A. § 5107 (b); Wise v. Shinseki, 26 Vet. App. 517, 531 (2014) ("By requiring only an 'approximate balance of positive and negative evidence' . . . the nation, 'in recognition of our debt to our veterans,' has 'taken upon itself the risk of error' in awarding . . . benefits.") (quoting Santosky v. Kramer, 455 U.S. 745, 755 (1982)); 38 C.F.R. § 3.102.

Factual Background

The Veteran maintains that he injured his left knee during physical training in service, as documented in his service records, and he continues to have the same problems that result in a left knee disability. The Veteran also contends that he has had night sweats ever since his discharge from service and this symptom was the first manifestation of his leukemia. With respect to his medical knowledge, the Veteran underscores that he became a registered nurse by 1996. At his 2013 hearing, the Veteran raised the argument for the first time that he had been exposed to depleted uranium during a military assignment in Hawaii to remove ordnance from a target field. The Veteran argues that his exposure to radiation during service caused him to contract chronic myeloid leukemia (CML). 

The service treatment records (STRs) are of generally poor legibility, but there are some records that were discernable. In October 1980, service medical records show that the Veteran reported that he had injured his left knee while playing football. Clinicians noted that the Veteran had moderate pain and his knee was "pressure sensitive" due to an apparent sprain. (STR-Medical-Photocopy, 3/8/2011, pps. 36-37; STR- Medical, 3/24/2011, pps. 93-94). In November 1980, the Veteran reported that he still had pain in his left knee. Clinicians noted mild pain centered on the medial aspect of the patella. Id. 

On VA treatment in February 2007, the Veteran described some pain involving his left knee from arthritis, but denied having any swollen joints. The Veteran specifically attributed his bilateral leg numbness to lower back pain that was severe a few times a year over the past 10 years. (Medical Treatment Record- Government Facility, 3/18/2011, p. 1.). VA treatment records also indicate that the Veteran has been treated extensively for CML through VA oncology departments ever since his diagnosis in 2007. (VA Examination, 5/25/2012, p. 1; Rating Decision, 4/5/2011). As a result of VA treatment, the Veteran achieved hematological remission of his leukemia by 2008. (Medical Treatment Record-Government Facily, 2/22/2011, p. 4.).

On VA examination in May 2011, the Veteran admitted that all of his joints have hurt him since he started the prescribed chemotherapy treatment for his leukemia. When specifically asked about pain in his legs, the Veteran indicated that he "can't feel them anyway." (VA Examination, 5/27/2011, p. 1). The Veteran reported that he has not noticed any pronounced left knee swelling or stiffness. He further indicated that he has not had any falling, instability, or flare-ups associated with his left knee and does not need any assistive devices. The VA examiner determined that the Veteran's knees were normal, including range of motion, and there was no pain, fatigue, weakness, crepitation, or lack of endurance. The left knee performed normally during all of the tests administered during the exam. The examiner concluded that that the Veteran's acute left knee medial collateral ligament sprain from an injury in 1980 had fully resolved, and thus, the Veteran had no chronic left knee disability related to, secondary to, or the result of service. Id. at 2.

On VA treatment in March 2015, the Veteran reported some bilateral leg pain, primarily in the back and radiating down his legs. The clinician diagnosed the Veteran with peripheral neuropathic pain in the legs and acknowledged other related medical conditions. (CAPRI, 5/29/2015, p. 1).

Left Knee Disability

Upon review of the evidence of record in conjunction with the applicable laws and regulations and for the reasons set forth below, service connection for the claimed left knee disability is not warranted.

In this regard, the Board finds that the May 2011 VA examination report persuasive and probative. Although the Veteran's STRs verify that he had a left knee sprain, this appears to have been and acute and transitory injury that resolved prior to discharge from service. There is no post-service medical evidence of a current and chronic left knee disability. VA medical records and some of the Veteran's own statements indicate that intermittent complaints of left knee symptoms have been attributed to other medical conditions or have not affected the Veteran in recent years. 

During the May 2011 VA examination, the Veteran indicated that all of his joints have been hurting him since he began chemotherapy treatment for leukemia. He reported that he has experienced leg numbness due to his other medical conditions, rather than due to the knee injury in 1980. Moreover, the 2011 examiner carefully conducted more than a half dozen tests on the Veteran's left knee in person and could not find any limitation of motion, laxity, instability, pain, fatigue, weakness, crepitation, or lack of endurance to support this claim. Each test showed "normal" results. The examiner declared that the Veteran's left knee performed normally, and there was no current left knee disability either caused by, related to, or secondary to service.

At the 2013 hearing, the Veteran confirmed that he had injured his left knee in service in 1980 while playing football and believes he had a diagnosis of sprained ligaments. The Veteran testified that his left knee "always" has been sore and impairs his speed of movement. He states that his current disability is the same type of knee injury with the same symptoms that he experienced in service. However, the Veteran admits that he has not seen any other doctors or clinics for treatment and does not apply any home care, other than stretching. He testified that he has not sought any treatment for his left knee since the time of the 2011 VA examination, and presently, he only complains of bilateral leg numbness.

On VA treatment in 2015, records show that the Veteran complained of some occasional pain in his left knee caused by arthritis and some numbness that he attributes to his lower back pain condition that affects him a few times a year. The clinician diagnosed him with peripheral neuropathy; however, this has not been associated with his knee injury in service.

The 2011 VA examination report holds significant probative weight as it was prepared by qualified VA examiner provided a thorough review of the Veteran's service records, medical history, and claims file; fully considered and recorded lay statements; and conducted several clinical tests on the left knee, including flexion/extension, varus and valgas stress, McMurray's, anterior posterior drawer, Lachman's test, and both patellar grind and patellar apprehension tests, in order to produce an accurate rationale for his opinion. The examiner found that the Veteran's prior left knee injury had resolved during service, and the Veteran had no chronic left knee disability. To date, the Veteran has not produced any competent or credible lay or medical evidence to contradict these detailed findings.

The Board acknowledges that the Veteran asserts he has a left knee disability. As recounted above, the Veteran has been somewhat contradictory in his statements about the nature and origin of left knee symptoms. In any case, pain alone without a diagnosed or identifiable underlying malady or condition, does not in and of itself constitute a disability for which service connection may be granted. See Sanchez-Benitez v. West, 13 Vet. App. 282, 285 (1999), appeal dismissed in part, and vacated and remanded in part sub nom. Sanchez-Benitez v. Principi, 259 F.3d 1356 (Fed. Cir. 2001). As the weight of the competent medical evidence reflects that the Veteran did not have a left knee disability at the time of discharge or at the time of his 2011 claim, and he has not had the same at any time since, there can be no valid claim of service connection for this disability. See Brammer, 3 Vet. App. at 225; Gilpin v. West, 155 F.3d 1353, 1356 (Fed. Cir. 1998); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); Romanowsky v. Shinseki, 26 Vet. App. 289, 293 (2013).

For these reasons, the Board finds that the preponderance of the evidence weighs against his claim of entitlement to service connection for a left knee disability. Therefore, the doctrine of reasonable doubt is not applicable, and the claim must be denied.

Chronic Myeloid Leukemia

The Board recognizes that the Veteran satisfies the first element to claim direct service connection for his leukemia because he has a current disability. 38 U.S.C.A. § 1110, 1131; 38 C.F.R. § 3.03(a). The Veteran has been clinically diagnosed and treated for chronic myeloid leukemia since 2007. However, to establish direct service connection, the Veteran also must demonstrate the following elements: an in-service incurrence or aggravation of a disease or injury; and a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see also Caluza v. Brown, 7 Vet. App. 498 (1995). 

In this case, the Veteran has claimed that he incurred his leukemia in service based on malaise symptoms, as documented in his 1981 service records when he was reporting for duty at 4AM. He further testified at the hearing that he has awoken to night sweats for years. However, the RO denied this claim because the Veteran provides no further evidence that any malaise, fatigue, or night sweats that he may have experienced in service, was proof of the onset of his leukemia nearly 30 years later. The record shows that the Veteran did not complain of any leukemia-related symptoms upon discharge in 1983, or during the following decades prior to his diagnosis in 2007. The Veteran has provided no additional evidence to show that his symptoms in service were early signs of leukemia. Medical examiners also have discounted this theory due to the extended time frame for the onset of the disease and the complete absence of chronic complaints during the duration prior to his diagnosis. Likewise, the presumptive service connection provisions for chronic disease do not apply because the leukemia did not have its onset until many years after service. See 38 C.F.R. §§ 3.303(b), 3.307(a)(3); 3.309(a). 

At the March 2013 hearing, the Veteran raised a new theory to support his assertion that that he acquired leukemia in service, and thereby, establish service connection. The Veteran testified at the hearing that he had been exposed to radiation from depleted uranium during his role cleaning up unexploded ordnance on Kaho'olawe, a small, uninhabited island in Hawaii that served as a military target range at the time.

Service connection for cancer attributed to radiation exposure during service may be accomplished in one of three ways. Ramey v. Brown, 9 Vet. App. 40, 44 (1996). First, there are 21 different types of cancer that may qualify for presumptive service connection. 38 U.S.C.A. § 1112(c). Second, cancers that fall under the list of "radiogenic diseases" pursuant to 38 C.F.R. § 3.311(b)(2) may be service connected, provided the conditions specified in that regulation have been satisfied. Radiogenic diseases include all forms of leukemia, except chronic lymphatic (lymphocytic) leukemia. 38 C.F.R. § 3.311(b)(2)(i). Third, direct service connection may be established by showing that the disease had been incurred during, or was aggravated by service, which is a task that "includes the difficult burden of tracing causation to a condition or event during service." Id., quoting Combee, 34 F.3d at 1043.

In this case, the Veteran does not contend that he participated in any of the specific activities deemed "radiation risk activities" by law, and thus, he does not met the legal definition of a "radiation-exposed veteran." 38 C.F.R. § 3.309(d)(3)(i). The handling of undetonated ordnance in Hawaii is not considered a "radiation-risk activity" under 38 C.F.R. § 3.309(d)(3)(ii). As such, the service connection presumption for radiation-exposed veterans does not apply. See
38 C.F.R. § 3.309(d).

The Board further notes that the service connection presumption provisions under 38 C.F.R. § 3.311, which require referral for specified development regarding dosimetry, only apply after VA has made a finding of exposure to ionizing radiation. Here, there is no public information that shows that the island of Kaho'olawe, where the Veteran claims to have worked, has been contaminated by depleted uranium. In fact, the U.S. Armed Forces and other public sources currently deny that any depleted uranium munitions or ordnance have been used or located on that specific island. (https://www.garrison.hawaii.army.mil/du/faq.htm) As there has been no such finding of radioactive exposure on Kaho'olawe, referral is not warranted. 

In this case, the only evidence of exposure to radiation is the Veteran's own statement that he may have had exposure to depleted uranium or may have handled unconfirmed radioactive ordnance while stationed in Hawaii. Despite specific requests from VA and the presiding VLJ, the Veteran has not provided any additional information to corroborate his assertions. While the Veteran may be competent to describe his direct exposure to munitions and bombs, or to describe information related to him about the depleted uranium content of certain munitions, the Veteran is not competent to determine whether he faced harmful radiation exposure at that military testing ground. Lay evidence is only competent if it conveys matters that can be observed or ascertained by a lay person. See
38 C.F.R. § 3.159 (a)(2). As a result, there is no competent evidence of the degree of contact, if any, that the Veteran had with any possible depleted uranium or other radioactive elements. 

For the foregoing reasons, the Board finds that the preponderance of the evidence weighs against the finding of an event, injury, or disease related to leukemia that occurred in service. Specifically, although the Veteran has a radiogenic disease, the Board finds that the preponderance of the evidence weighs against a finding that the Veteran engaged in a radiation risk activity or had been exposed to ionizing radiation in service. As a result, the doctrine of the benefit of the doubt is not applicable, and service connection must be denied.

The Board is grateful for the Veteran's service to his country in the Marine Corps and regrets that a more favorable outcome on these matters could not be reached.


ORDER

Service connection for a left knee disability is denied.

Service connection for chronic myeloid leukemia is denied.



____________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs