Citation Nr: 1730446 
Decision Date: 07/06/17 Archive Date: 08/09/17

DOCKET NO. 09-33 868 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Louisville, Kentucky


THE ISSUES

1. Entitlement to service connection for coronary artery disease (CAD), to include as due to exposure to contaminated water at Camp Lejeune.

2. Entitlement to service connection for diabetes mellitus, to include as due to exposure to contaminated water at Camp Lejeune.

3. Entitlement to service connection for an intestinal disability, including a benign polyp (claimed as colon cancer), to include as due to exposure to contaminated water at Camp Lejeune.

4. Entitlement to an initial rating in excess of 20 percent prior to June 16, 2011, and from August 1, 2011 to October 23, 2015, for a right shoulder disability.


REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

A. Hemphill, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the Marine Corps from July 1977 to July 1981.

These matters come before the Board of Veterans' Appeals (Board) on appeal from April 2008, September 2008 and October 2009 rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Louis, Missouri. The September 2008 rating decision denied service connection for CAD and the October 2009 rating decision denied the remaining issues. The appeal was subsequently transferred to Louisville, Kentucky, which has jurisdiction.

The Board notes that the Veteran initially filed a claim for his right shoulder disability, which was first denied in April 2007. The claim was subsequently granted in an April rating decision and assigned a 20 percent disability rating effective July 25, 2006. Thereafter, in October 2008, the Veteran submitted an increased rating claim for his right shoulder disability. An October 2009 rating decision denied the increased rating claim and the Veteran timely filed a substantive appeal. As the April 2007 rating decision did not become final, the Board has recharacterized the issue as listed on the title page. See 38 C.F.R. § 3.156 (b) (providing that if new and material evidence is received within one year after the date of mailing of an RO decision, it may be "considered as having been filed in connection with the claim which was pending at the beginning of the appeal period"); Young v. Shinseki, 22 Vet. App. 461, 466 (2009) (holding that new and material evidence received within one year of an RO decision prevents that decision from becoming final).

In an October 2011 rating decision, a temporary 100 percent disability rating based on surgical treatment necessitating convalescence was granted for the right shoulder disability effective June 16, 2011, and then a 20 percent disability rating was granted effective August 1, 2011. Another temporary 100 percent disability rating based on surgical treatment necessitating convalescence was granted for the right shoulder in a January 2016 rating decision. This 100 percent disability rating is currently in effect; therefore, the issue on appeal is entitlement to an initial increased disability rating in excess of 20 percent for the periods that the temporary 100 percent were not in effect. 


FINDINGS OF FACT

1. The Veteran served at Camp Lejeune, North Carolina and is presumed to have been exposed to contaminated water during service.

2. Symptoms of CAD were not chronic in service, not continuous since service separation, and did not manifest to a compensable degree within one year of service separation.

3. The currently diagnosed CAD was not incurred in service and is not etiologically related to service, including as due to exposure to contaminated water during service.

4. Symptoms of diabetes mellitus were not chronic in service, not continuous since service separation, and did not manifest to a compensable degree within one year of service separation.

5. The currently diagnosed diabetes mellitus was not incurred in service and is not etiologically related to service, including as due to exposure to contaminated water during service.

6. Symptoms of an intestinal disability were not chronic in service, not continuous since service separation, and did not manifest to a compensable degree within one year of service separation.

7. The currently diagnosed intestinal disability was not incurred in service and is not etiologically related to service, including as due to exposure to contaminated water during service.

8. The Veteran is right hand dominant.

9. Prior to June 16, 2011, the Veteran's right shoulder disability was manifested by limitation of motion at shoulder level with no evidence of frequent episodes of recurrent dislocation at the scapulohumeral joint with guarding of all arm movements.

10. From August 1, 2011 to October 23, 2015, the Veteran's right shoulder disability was manifested by limitation of motion at shoulder level with no evidence of frequent episodes of recurrent dislocation at the scapulohumeral joint with guarding of all arm movements.


CONCLUSIONS OF LAW

1. Coronary artery disease was not incurred in service and may not be presumed to have been incurred in service, including as due to exposure to contaminated water at Camp Lejeune, North Carolina. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 17.400 (2016).

2. Diabetes mellitus was not incurred in service and may not be presumed to have been incurred in service, including as due to exposure to contaminated water at Camp Lejeune, North Carolina. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 17.400 (2016).

3. An intestinal disability was not incurred in service and may not be presumed to have been incurred in service, including as due to exposure to contaminated water at Camp Lejeune, North Carolina. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 17.400 (2016).

4. The criteria for an initial disability rating in excess of 20 percent for a right shoulder disability prior to June 16, 2011, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.71a, Diagnostic Code 5201 (2016).

5. The criteria for a disability rating in excess of 20 percent for a right shoulder disability from August 1, 2011 to October 23, 2015, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.71a, Diagnostic Code 5201 (2016).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In the present case, required notice was provided by letters dated September 2006, May 2008, and September 2009. See Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). 

As to VA's duty to assist, all necessary development has been accomplished. See Bernard v. Brown, 4 Vet. App. 384 (1993). The Veteran's service treatment records (STRs) and VA medical records have been obtained, as have relevant private medical records identified by the Veteran. Additionally, the Veteran has been afforded VA examinations to evaluate the severity of his service-connected right shoulder disability, and to determine the etiology of his CAD, diabetes mellitus and intestinal disability. The examinations were adequate as they were based on consideration of the Veteran's prior medical history and described the disabilities in sufficient detail to allow the Board to make a fully informed evaluation. Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007).

Moreover, in accordance with the September 2014 Board remand, updated VA treatment records and Social Security Administration records were associated with the record, and the Veteran underwent additional VA examinations in August 2015 for his right shoulder and April 2016 for CAD, diabetes mellitus and an intestinal disability. After this review of the record, the agency of original jurisdiction (AOJ) has substantially complied with the remand orders and satisfied the duty to assist. Stegall v. West, 11 Vet. App. 268 (1998); see D'Aries v. Peake, 22 Vet. App. 97 (2008) (finding that only substantial compliance, rather than strict compliance, with the terms of a Board engagement letter requesting a medical opinion is required).

All necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993).

Merits of the Increased Service Connection Claims

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131, 38 C.F.R. § 3.303 (a). Service connection may also be granted for any disease diagnosed after discharge when the evidence shows that the disease was incurred in service. 38 C.F.R. § 3.303 (d). Entitlement to service connection is established when the following elements are satisfied: (1) the existence of a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship or "medical nexus" between the current disability and the disease or injury incurred or aggravated during service. Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004); see 38 C.F.R. § 3.303 (a). 

There is also a presumption of service connection for the chronic diseases listed in 38 C.F.R. § 3.309 (a), including coronary artery disease and diabetes mellitus. See 38 C.F.R. § 3.303 (b); Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2012). Under the presumption, if the chronic disease manifested in service, then service connection will be established for subsequent manifestations of the same chronic disease at any date after service, no matter how remote, without having to show a causal relationship or medical nexus, unless the later manifestations are clearly due to causes unrelated to service ("intercurrent causes"). 38 C.F.R. § 3.303 (b); Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2012). When the condition noted during service is not shown to be chronic, or its chronicity may be legitimately questioned, then a continuity of symptoms after service must be shown to establish service connection under this provision. Id.; Walker, 708 F.3d at 1338-39.

In addition, where a veteran served continuously for 90 days or more during a period of war, or during peacetime service after December 31, 1946, there is a presumption of service connection for coronary artery disease and diabetes if the disease manifested to a degree of 10 percent or more within one year from the date of separation from service, even if there is no evidence of the disease during the service period itself. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309(a). This presumption may be rebutted by affirmative evidence to the contrary. 38 C.F.R. § 3.307 (d).

Service connection may also be granted on a presumptive basis for certain diseases associated with exposure to contaminants (defined as the volatile organic compounds trichloroethylene (TCE), perchloroethylene (PCE or PERC), benzene, and vinyl chloride) in the on-base water supply located at Camp Lejeune (contaminated water), even though there is no record of such disease during service, if they manifest to a compensable degree at any time after service, in a veteran, former reservist, or a member of the National Guard, who had no less than 30 days (consecutive or nonconsecutive) of service at the United States Marine Corps Base Camp Lejeune and/or Marine Corps Air Station New River in North Carolina, during the period beginning on August 1, 1953 and ending on December 31, 1987. Diseases Associated with Exposure to Contaminants in the Water Supply at Camp Lejeune, 82 Fed. Reg. 4,173 (Jan. 13, 2017) (to be codified at 38 C.F.R. pt. 3). This presumption may be rebutted by affirmative evidence to the contrary. Id. 

The following diseases are deemed associated with exposure to contaminated water at Camp Lejeune: kidney cancer, liver cancer, Non-Hodgkin's lymphoma, adult leukemia, multiple myeloma, Parkinson's disease, aplastic anemia and other myelodysplastic syndromes, and bladder cancer. Id. CAD, diabetes mellitus, and a benign polyp are not diseases for which presumptive service connection based on exposure to contaminated water at Camp Lejeune may be granted. Id.

Notwithstanding the foregoing presumption provisions for exposure to contaminated water at Camp Lejeune, a claimant is not precluded from establishing service connection with proof of direct causation. Combee v. Brown, 34 F.3d 1039, 1042 (Fed. Cir. 1994); see also Ramey v. Gober, 120 F.3d 1239, 1247-48 (Fed. Cir. 1997), aff'g Ramey v. Brown, 9 Vet. App. 40 (1996); Brock v. Brown, 10 Vet. App. 155, 160-61 (1997).

The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the appellant or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate each claim and what the evidence in the claims file shows, or fails to show, with respect to each claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107, 38 C.F.R. § 3.102 ; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

The Veteran asserts that coronary artery disease, diabetes mellitus and a benign polyp are caused by in-service exposure to contaminated water at Camp Lejeune, North Carolina. The Veteran's Certificate of Service indicates that the Veteran was stationed at Camp Lejeune during the relevant time period. Therefore, exposure to contaminated water is presumed.

The Veteran has current diagnoses of CAD, diabetes mellitus and a benign polyp. However, as noted above, CAD, diabetes mellitus and benign polyps are not on the presumptive list of diseases associated with exposure to contaminated water at Camp Lejeune, thus, a nexus linking the current prostate cancer and military service cannot be presumed under the law, regardless of the Veteran's exposure to contaminated water during service. Id.

The Board finds that the weight of the evidence is against a finding that symptoms of CAD, diabetes mellitus and benign polyp were "chronic" in service. Service treatment records do not reflect any history or treatment for CAD, diabetes mellitus or a benign polyp. Although the Veteran sought treatment for chest pain in January 1978 and August 1978, the January 1978 complaint of chest pain was reported to be alcohol related. The August 1978 chest pain was determined to be gastritis. As such, the Board finds that symptoms of a CAD, diabetes mellitus and a benign polyp were not chronic in service.

Post-service evidence does not reflect treatment for CAD, diabetes mellitus or an intestinal disability within one year following separation from service. Therefore, presumption of service connection provided under 38 C.F.R. §§ 3.307 and 3.309 is not warranted.

The Board next considers whether the evidence establishes a medical nexus between active duty service, to include exposure to contaminated water and current complaints. The evidence does not indicate that the current disabilities - CAD, diabetes mellitus and an intestinal disability are connected to service.

In August 2012, the Veteran underwent a VA examination to determine the etiologies of CAD, diabetes mellitus and the intestinal disability. The examining physician diagnosed the Veteran with CAD and stable angina. He noted that the CAD had no strong association statistically following exposure to contaminated water and was not recognized as "being a disease process with statistical power per current VA guidelines." Upon examination of the Veteran and the record, to include his family history of myocardial infarction, the examiner determined that CAD was not caused by service. The examiner noted the Veteran's in-service non-specific complaints of chest pain in 1978 and further noted that CAD was not proven until many years after service, which followed the Veteran's long standing hypertension, elevated cholesterol and cigarette usage. He further noted the angioplasties to treat his CAD in 2003, 2004 and 2008. 

The examiner considered medical literature regarding the causes of CAD; the Veteran's risk factors to include his age, gender, hyperlipidemia, smoking history and the fact that he was overweight; and the markedly strong family history as the Veteran's four uncles, three of five of five siblings and father all had heart disease and determined that the CAD was not incurred in or caused by service, to include exposure to contaminated water. He further determined that the CAD's etiology was the hypertension, elevated cholesterol and cigarette use.

Regarding diabetes mellitus, the examiner reviewed the file and determined that the Veteran did not meet the criteria for a diagnosis of diabetes mellitus. The examiner noted that in July 2008, the Veteran was briefly prescribed Metformin because the Veteran was "thought to be approaching carbohydrate intolerance and the clinician wanted therefore to prevent diabetes or delay" its onset. The examiner further noted that from 2009 to the date of the examination, the Veteran only had one glucose value over 126 (it was 129 once in 2011), which indicates that the Veteran did not have diabetes mellitus. The Veteran's most recent glucose tolerance test results were hemoglobin A1c at 6.3 percent (less than 6.5 percent indicates no diabetes) in January 2012 and fasting plasma glucose at 78 (less than 100 indicates no diabetes) in August 2012.

In regards to the intestinal disability, the examiner noted that in August 2012, the Veteran underwent a colonoscopy which resulted in the removal of benign, non-malignant polyps. Benign neoplasms were noted. Upon review of the record, the examiner determined that the Veteran's intestinal disability was not incurred in or caused by service, to included exposure to contaminated water as he did not have a malignant colonic neoplasm. 
As directed by the Board, additional opinion evidence was sought based on additional questions raised by the record and in finding that the previous examination opinions were not sufficient upon which to adequate the issues in appellate status. In April 2016, the Camp Lejeune subject matter expert provided an opinion regarding the etiologies of CAD, diabetes mellitus and the intestinal disability. Upon review of the record and medical literature, the expert opined that none of the disabilities were caused by exposure to contaminated water at Camp Lejeune. 

Regarding CAD, the expert cited medical evidence from the National Academy of Sciences 2009 report on contaminated water supplies at Camp Lejeune, which noted that cardiovascular effects were in the category of "inadequate/insufficient evidence to determine an association." The expert also noted that the Bove et al cohort study referred to cardiovascular disease as "a condition not known to be related to solvent exposure." Finding an absence of medical/scientific evidence supporting a causal association between CAD and contaminated water at Camp Lejeune, and considering the Veteran's major personal risk factors, such as his age, gender, hyperlipidemia, obesity, smoking history and markedly strong family history of heart disease, the examiner opined that CAD was not caused by exposure to contaminated water.

With respect to diabetes mellitus, the expert cited medical research which stated that the offspring of a parent with type 2 diabetes mellitus has an estimated 20 percent risk of developing type 2 diabetes mellitus by late adulthood. The expert considered that diabetes mellitus is not on the list of reported human health effects linked with exposure to contaminated water at Camp Lejeune, and the Veteran's personal risk factors, to include obesity, hypertension, hyperlipidemia and a reported family history of diabetes, and opined that the Veteran's diabetes was not caused by his exposure to contaminated water at Camp Lejeune.

Lastly, the expert opined that the intestinal disability (benign colon polyp) was not caused by his exposure to contaminated water at Camp Lejeune. As with the previous disabilities, benign colon polyps are not listed as reported health problems in people of all ages from exposure to water contaminated at Camp Lejeune. She noted that the list does include rectal cancer, but does not include non-malignant colon polyps. Upon comprehensive review of the current medical scientific literature and the Veteran's elevated BMI, age and history of smoking, the expert provided the negative opinion.

In April 2016, the Veteran was afforded another VA examination to determine the etiologies of diabetes mellitus and the intestinal disability. The examiner noted that the August 2009 private treatment records indicated a history of type 2 diabetes and metformin was listed as a current medication. She also noted the August 2012 VA examiner's finding that the Veteran did not have diabetes mellitus. Upon review of the evidence, she determined that he Veteran's diabetes mellitus was not related to service. The examiner considered the absence of in-service treatment or diagnosis of diabetes, the 10 (or more) year later diagnosis of diabetes, and the Veteran's major risk factors, to include his obesity, and found that diabetes was not related to service. 

Similarly, the examiner considered the absence of treatment or diagnosis of an intestinal disability in service, the discovery of benign colon polyps in 2009 (over 20 years after service) and his risk factors (family history/genetics, obesity, smoking, and excess alcohol use, and determined that his intestinal disability was not related to service.

The Board has reviewed the evidence, to include the Veteran's statements; however, the evidence does not show that the Veteran's exposure to contaminated water caused CAD, diabetes mellitus or an intestinal disability. Further, the evidence shows no direct nexus between CAD, diabetes mellitus or an intestinal disability and service. The preponderance of the evidence is against the claims for service connection and the claims must be denied. As the preponderance of the evidence is against the claims, the benefit of the doubt doctrine is not for application. See 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 3.102.


Merits of the Increased Rating Claim

The Veteran contends that his right shoulder disability warrants a higher initial disability rating in excess of 20 percent. As noted in the introduction, the Veteran was in receipt of a 100 percent disability rating for his right shoulder from June 16, 2011 to July 31, 2011 and from October 23, 2015 to present. For all the other periods on appeal, the Veteran was in receipt of a 20 percent disability rating; therefore, the periods on appeal are July 25, 2006 to June 15, 2011 and August 1, 2011 to October 22, 2015. 

Disability ratings are determined by comparing a Veteran's present symptomatology with criteria set forth in the VA's Schedule for Rating Disabilities (Rating Schedule), which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3. The Veteran's entire history is reviewed when making disability evaluations. See generally, 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995).

The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings," whether it is an initial rating case or not. Fenderson v. West, 12 Vet. App. 119, 126-27 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

In evaluating disabilities of the musculoskeletal system, painful motion is an important factor of disability. See 38 C.F.R. § 4.59 (2017). The intent of the schedule is to recognize painful motion with joint or particular pathology as productive of disability. Id. Joints that are actually painful, unstable, or malaligned, due to healed injury, should be entitled to at least the minimum compensable rating for the joint. Id. Special note should be taken of objective indications of pain on pressure or manipulation, muscle spasm, crepitation, and active and passive range of motion of both the damaged joint and the opposite undamaged joint. Id.; see also Burton v. Shinseki, 25 Vet. App. 1 (2011) (holding that section 4.59 applies to all forms of painful motion of joints, and not just to arthritis).

Moreover, when evaluating disabilities of the musculoskeletal system, consideration must be given to functional loss due to pain and weakness causing additional disability beyond that reflected on range of motion measurements. 38 C.F.R. § 4.40 (2016). Consideration must also be given to weakened movement, premature or excess fatigability and incoordination. 38 C.F.R. § 4.45 (2016); DeLuca v. Brown, 8 Vet. App. 202, 206-07 (1995) (holding that the criteria discussed in sections 4.40 and 4.45 are not subsumed by the Diagnostic Codes applicable to the affected joint). 

The Court of Appeals for Veterans Claims (Court) clarified that although pain may be a cause or manifestation of functional loss, limitation of motion due to pain is not necessarily rated at the same level as functional loss where motion is impeded. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011); cf. Powell v. West, 13 Vet. App. 31, 34 (1999); Hicks v. Brown, 8 Vet. App. 417, 421 (1995); Schafrath v. Derwinski, 1 Vet. App. 589, 592 (1991). Instead, the Mitchell Court explained that pursuant to 38 C.F.R. §§ 4.40 and 4.45, the possible manifestations of functional loss include decreased or abnormal excursion, strength, speed, coordination, or endurance, as well as less or more movement than is normal, weakened movement, excess fatigability, and pain on movement (as well as swelling, deformity, and atrophy) that affects stability, standing, and weight-bearing. See 38 C.F.R. §§ 4.40 , 4.45. Thus, functional loss caused by pain must be rated at the same level as if the functional loss were caused by any of the other factors cited above. In evaluating the severity of a joint disability, VA must determine the overall functional impairment due to these factors.

The standard of proof to be applied in decisions on claims for Veterans' benefits is set forth in 38 U.S.C.A. § 5107 (West 2014). A claimant is entitled to the benefit of the doubt when there is an approximate balance of positive and negative evidence. See also 38 C.F.R. § 3.102. When a claimant seeks benefits and the evidence is in relative equipoise, the claimant prevails. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990). The preponderance of the evidence must be against the claim for benefits to be denied. See Alemany v. Brown, 9 Vet. App. 518 (1996).

As a foundational matter, ratings based on function impairment of the upper extremities are predicated upon which extremity is the major extremity, with only one extremity being considered major. 38 C.F.R. § 4.69. The medical evidence in this case reflects that the Veteran is right-hand dominant; therefore, his right extremity is the major one.

The RO rated the Veteran's right shoulder osteoarthritis as 20 percent disabling pursuant to DC 5010-5201. 38 C.F.R. § 4.71a.

DC 5010 provides that traumatic arthritis, when substantiated by X-ray findings, is to be evaluated under DC 5003 as degenerative or osteoarthritis, which in turn indicates the disability will be rated on the basis of limitation of motion under the appropriate Diagnostic Codes for the specific joint or joints involved. See 38 C.F.R. § 4.71a , DCs 5003, 5010.

Under DC 5201, limitation of motion to shoulder level (e.g., flexion to 90 degrees) in the major (or minor extremity) warrants a 20 percent rating. A 30 percent rating is warranted for limitation of the major arm to midway between the side and shoulder level, that is, 45 degrees. For limitation of motion to 25 degrees in the major extremity, the disability is rated at 40 percent.

Normal ranges of motion of the shoulder are flexion (forward elevation) from 0 to 180 degrees, abduction from 0 to 180 degrees, and both internal and external rotation from 0 to 90 degrees. 38 C.F.R. § 4.71, Plate I.

Turning to the evidence, VA treatment records show that the Veteran underwent physical therapy for his right shoulder from June 2009 to August 2009. The treatment records also show that the Veteran receives injections in his shoulder for pain. 

The Veteran underwent VA examinations in March 2008, April 2009, August 2012 with a May 2013 addendum opinion, and August 2015. 

The March 2008 VA examination showed that the Veteran's right shoulder disability symptoms were giving way, instability, pain stiffness, daily episodes of dislocation or subluxation, daily locking episodes, weekly severe flare-ups, and tenderness. Range of motion testing revealed flexion of the right shoulder to 95 degrees with pain beginning at 95 degrees and abduction was to 95 degrees with pain beginning at 65 degrees. External rotation (both active and passive motion) was to 70 degrees with pain beginning at 70 degrees. Internal rotation active motion testing was to 35 degrees with pain beginning at 35 degrees and passive motion testing was to 40 degrees with pain beginning at 35 degrees. Recurrent shoulder dislocations and "popping" were noted, as well as guarding of movement at shoulder level. There was no evidence of a rotator cuff tear.

During an April 2009 VA examination report, the Veteran reported that he missed three opportunities for jobs due to his right shoulder disability. There was evidence of giving way, instability, pain, stiffness, weakness, incoordination and decreased speed of joint motion. There was no evidence of deformity, locking episodes or ankylosis. There was no evidence of recurrent shoulder dislocations; however, guarding of movement was noted. Inferior humeral head body protuberance and adjacent loose body appeared unchanged. There was mile glenohumeral joint degenerative joint disease. Rating of motion testing revealed flexion to 90 degrees; abduction to 70 degrees; internal rotation to 40 degrees and external rotation to 50 degrees. Objective evidence of pain with active motion and pain following repetitive motion was noted. There was no additional limitation of motion after three repetitions.

On an August 2012 VA examination report, range of motion testing revealed flexion of the right shoulder to 115 degrees with pain beginning at 90 degrees and abduction was to 95 degrees with pain beginning at 85 degrees. During the examination, Hawkin's impingement, Empty-can, and external rotation/infraspinatus strength tests were positive. Lift-off subscapularis test was also positive. There was a history of mechanical symptoms such as clicking and catching. There was no history of recurrent dislocation of the glenohumeral joint. The Veteran had dislocation of the acromioclavicular separation or sternoclavicular dislocation on the right side. Cross-body abduction test was positive. The examiner noted that the Veteran had scarring and some atrophy of the anterolateral deltoid muscles on the right side.

During the August 2012 VA examination, the Veteran described constant pain at a level of 5 to 6 out of 10. The Veteran reported that he occasionally has flare ups with a pain level of 8 out of 10, which he treated with Vicodin. The examiner noted that because of the right shoulder disability, lifting and carrying excess weight, sustained overhead reaching and repetitive pushing and pulling would be difficult. 

An August 2012 VA addendum report shows that internal rotation was 60/70 degrees and upon repetitive use, it was to 65 degrees with pain, stiffness, fatigability and weakness. External rotation was to 15/20 degrees and upon repetitive use, it was to 15 degrees with pain, stiffness, fatigability and weakness.

The May 2013 VA addendum report showed that post repetitive use test range of motion was flexion to 110 degrees and abduction to 90 degrees. External and internal rotation was to 20 degrees and 30 degrees, respectively. Post repetitive use test external and internal rotation was 30 degrees and 25 degrees, respectively.

On review, the Board finds that the evidence weighs against the assignment of a rating higher than 20 percent for the Veteran's right shoulder disability during any period on appeal. Right shoulder motion has been, at worst, limited to 65 degrees with pain, stiffness, fatigability and weakness upon repetitive use. His right arm motion is not shown to be limited to midway between the side and shoulder level (45 degrees), or worse, at any time during the rating period to support a higher rating.

There is no basis for the assignment of a higher rating based on consideration of any of the factors addressed in 38 C.F.R. §§ 4.40, 4.45 and DeLuca, 8 Vet. App. at 204 -07. In this case, the evidence clearly shows that the right shoulder disability causes pain on motion, pain with use and difficulty lifting overhead.

The Board recognizes the August 2012 VA examiner's determination that the Veteran's shoulder pain, itself, caused functional loss on regular range-of-motion testing. Even considering this additional functional loss however, the Board finds that the criteria for a higher rating are not met or approximated. The current 20 percent rating adequately portrays any functional impairment, pain, fatigue, weakness, and any flare-ups that the Veteran experiences as a consequence of his right shoulder disability.

No other higher or separate rating is warranted under any of the other diagnostic codes pertaining to the shoulder. Because the evidence does not show that the Veteran has ankylosis of the right scapulohumeral articulation, the criteria for a rating in excess of 20 percent under DC 5200 are not met.

DC 5202 provides ratings based impairment of the humerus; however, the evidence shows that at worst, the Veteran had frequent episodes of dislocation and guarding of movement only at the shoulder level. This is characteristic of the 20 percent rating under this diagnostic code. A higher 30 percent rating requires frequent episodes of dislocation and guarding all arm movements, which the Veteran is not shown to have had at any time during the appeal period. Therefore, a higher rating would not be warranted under DC 5202. Further, the Board observes that the evidence does not demonstrate that the Veteran has malunion of the humerus with marked deformity or recurrent dislocation at scapulohumeral joint with frequent episodes of dislocation at scapulohumeral joints and guarding of all arm movements to warrant a higher, separate rating under DC 5202.

Because DC 5203 provides a maximum 20 percent rating for impairment of the major or minor clavicle or scapula, a higher rating is not available under such code. The Board also considered whether a separate rating is potentially warranted under DC 5203. The noted VA examination reports indicate some tenderness, but no impairment of the clavicle, scapula, acromioclavicular, or sternoclavicular joint of the right extremity. A separate rating under DC 5203 is not warranted.

The Veteran is competent to report his observable right shoulder symptoms, such as pain and weakness. See Layno v. Brown, 6 Vet. App. 465, 470 (1994). However, without the appropriate medical training and expertise, he is not competent to provide an opinion on a medical matter, such as the severity of his shoulder disability. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). Thus, although the Veteran's reports of symptoms have been considered, the Board attaches greater probative weight to the clinical findings of skilled, medical professionals. See Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991).

In summary, the Board finds that the criteria for a rating higher than 20 percent for a right shoulder disability have not been met or approximated at any point during the appeal period. The claim must therefore be denied.

In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321. The Court has set out a three-part test, based on the language of 38 C.F.R. § 3.321 (b)(1), for determining whether a veteran is entitled to an extraschedular rating: (1) the established schedular criteria must be inadequate to describe the severity and symptoms of the claimant's disability; (2) the case must present other indicia of an exceptional or unusual disability picture, such as marked interference with employment or frequent periods of hospitalization; and (3) the award of an extraschedular disability rating must be in the interest of justice. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). 

The evidence in this case does not show such an exceptional disability picture that the available schedular ratings for the service-connected bilateral shoulder and left bicep disabilities are inadequate. A comparison between the level of severity and symptomatology of the Veteran's disabilities, with the established criteria found in the rating schedule shows that the rating criteria reasonably describe the Veteran's disability levels and symptomatology. The symptoms of the Veteran's right shoulder disability are contemplated by the rating schedule as explained above, and accordingly, the rating criteria contemplate these disabilities. There is no evidence in the record or allegation of symptoms of and/or impairment due to these disabilities not encompassed by the criteria for the schedular ratings assigned. Referral of this case for extraschedular consideration pursuant to 38 C.F.R. 3.321 (b)(1) is therefore not warranted.

According to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be entitled to "consideration [under 38 C.F.R. § 3.321 (b)] for referral for an extra-schedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations." Referral for an extraschedular rating under 38 C.F.R. § 3.321 (b) is to be considered based upon either a single service-connected disability or upon the "combined effect" of multiple service-connected disabilities when the "collective impact" or "compounding negative effects" of the service-connected disabilities, when such presents disability not adequately captured by the schedular ratings for the service-connected disabilities.

In this case, the Veteran has not asserted, and the evidence of record does not suggest, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. In this case, there is neither allegation nor indication that the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria.

The Board notes that the Veteran has been in receipt of a 100 percent disability rating since July 2009. Therefore, although the Veteran reported missing work due to his right shoulder disability during the August 2009 examination, consideration of TDIU is not necessary.


ORDER

Service connection for CAD to include as due to exposure to contaminated water at Camp Lejeune is denied.

Service connection for diabetes mellitus, to include as due to exposure to contaminated water at Camp Lejeune is denied.

Service connection for an intestinal disability, including a benign polyp (claimed as colon cancer), to include as due to exposure to contaminated water at Camp Lejeune is denied.

An initial rating in excess of 20 percent prior to June 16, 2011, and from August 1, 2011 to October 23, 2015, for a right shoulder disability is denied.



____________________________________________
Nathaniel J. Doan
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs