Citation Nr: 1826236 
Decision Date: 04/26/18 Archive Date: 05/07/18

DOCKET NO. 03-28 779A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
in New York, New York


THE ISSUE

Entitlement to service connection for diabetes mellitus, to include as due to herbicide exposure including Agent Orange.


WITNESSES AT HEARING ON APPEAL

The Veteran and spouse (Appellant)


ATTORNEY FOR THE BOARD

E. Choi, Associate Counsel


INTRODUCTION

The appellant is the surviving spouse of the Veteran, who had active service from August 1961 to August 1965. While the appeal was pending, the Veteran died in November 2017. In December 2017, the appeal was dismissed due to death of the Veteran. 38 U.S.C. § 7104(a) (2012); 38 C.F.R. § 20.1302 (2017). The appellant is now pursuing the appeal as a substituted claimant under the provisions of 38 U.S.C. § 5121A (2012). See March 2018 decision granting the request to substitute following a January 2018 request for substitution of claimant upon death of claimant (VA Form 21-0847).

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a January 2003 rating decision of the RO in New York, New York, which denied service connection for diabetes mellitus.

In August 2006, the Veteran testified at a Board videoconference hearing before a Veterans Law Judge (VLJ) at the RO in Albany, New York. That VLJ is no longer employed at the Board, and the Veteran was offered the opportunity for a new Board hearing. In June 2009, the Veteran testified at a personal Board hearing before the undersigned VLJ in Washington, D.C. Transcripts of the hearings are of record.

In a December 2012 decision, the Board denied service connection for diabetes mellitus, to include as due to herbicide exposure. The Veteran appealed the Board's December 2012 decision to the United States Court of Appeals for Veterans Claims (Court). In October 2013, the Court vacated the Board's December 2012 decision pursuant to an Amended Joint Motion for Remand. The parties to the Amended Joint Motion for Remand requested that the Court vacate the Board's decision on the basis that the Board's decision did not adequately address whether the development undertaken by VA in its attempt to verify the Veteran's contentions of in-service herbicide exposure was adequate, noting that the Board's discussion was limited to verification of the use of tactical herbicides and did not adequately consider the Veteran's contentions that he was exposed to herbicides through routine base maintenance, which would entail the use of a commercial herbicide agent. The parties noted that the theory of commercial herbicide exposure was not developed by VA as part of its duty to assist or addressed by the Board even though the Veteran indicated that the herbicide agent used at the San Diego Naval Base was Dalapon, a non-tactical herbicide agent. The parties further agreed that the Board's determination that the Veteran's assertions of herbicide exposure was not credible was inadequate. The Amended Joint Motion for Remand instructed the Board to consider whether additional development was necessary based on the Veteran's statements of exposure to an herbicide agent.

In May 2014, the Board remanded the appeal to the RO for further development pursuant to the Amended Joint Motion for Remand. Specifically, the May 2014 Board remand directives instructed the RO to attempt to document the use of commercial herbicides, including Dalapon, at the San Diego Naval Base, and if commercial herbicides were used, the RO was instructed to obtain a VA medical opinion as to whether the Veteran's diabetes mellitus was etiologically related to in-service exposure to commercial herbicides. As discussed below, the Board finds that the Board's May 2014 remand directives were complied with and the matter has been properly returned to the Board for appellate adjudication.

In June 2017, the Board sought a Veterans Health Administration (VHA) advisory medical opinion from an internist, which was received in September 2017. In October 2017, the appellant was sent appropriate notice of the opinion, and was given 60 days to respond. 38 C.F.R. § 20.903 (2017). In December 2017, the appellant submitted additional evidence in response to the September 2017 VHA expert's opinion and waived initial RO consideration of the new evidence. As such, the Board may consider this evidence in the first instance. 38 C.F.R. § 20.1304(c) (2017).

The Board has reviewed the electronic file on "Virtual VA" and the Veterans Benefits Management System (VBMS) to ensure a complete review of the evidence in this case.


FINDINGS OF FACT

1. The Veteran did not have "service in the Republic of Vietnam," was not presumptively exposed to tactical herbicides during active service, and was not actually exposed to tactical herbicides during service.

2. The Veteran was not exposed to Silvex during service.

3. The Veteran was exposed to commercial herbicides during service, including Dalapon.

4. The Veteran did not sustain an injury or disease of the endocrine system in service.

5. Symptoms of diabetes mellitus were not chronic in service, were not continuous after service separation, and did not manifest to a compensable degree within one year of separation from service.

6. The Veteran's diabetes mellitus was not related to an in-service injury, disease, or event, to include exposure to commercial herbicides including Dalapon.






CONCLUSION OF LAW

The criteria for service connection for diabetes mellitus have not been met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1131, 5103(a), 5103A, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duties to notify and assist claimants in substantiating their claims for VA benefits. 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2017). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim and of the relative duties of VA and the claimant for procuring that evidence. 38 U.S.C. § 5103(a); 38 C.F.R. § 3.159(b) (2017). Such notice should also address VA's practices in assigning disability ratings and effective dates for those ratings. See Dingess v. Nicholson, 19 Vet. App. 473 (2006). Notice should be provided to a claimant before the Agency of Original Jurisdiction's initial unfavorable decision on a claim. 38 C.F.R. § 3.159(b)(1); Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004); see also Mayfield v. Nicholson, 19 Vet. App. 103, 110 (2005), rev'd on other grounds, 444 F.3d 1328 (Fed. Cir. 2006).

In a January 2002 letter, the RO provided preadjudicatory notice to the Veteran regarding what information and evidence is needed to substantiate a claim for service connection on the merits, as well as what information and evidence must be submitted by the Veteran, and what evidence VA would obtain; December 2009 and April 2010 VCAA notice letters included provisions for disability ratings and for the effective date of the claim. The RO readjudicated the case in subsequent supplemental statements of the case (SSOC), thus curing VCAA notice timing associated with the later December 2009 and April 2010 notice letters. The United States Court of Appeals for the Federal Circuit (Federal Circuit) held that a statement of the case (SOC) or SSOC can constitute a "readjudication decision" that complies with all applicable due process and notification requirements if adequate VCAA notice is provided prior to the SOC or SSOC. See Mayfield v. Nicholson, 499 F.3d 1317 (Fed. Cir. 2007). As a matter of law, the provision of adequate VCAA notice prior to a readjudication "cures" any timing problem associated with inadequate notice or the lack of notice prior to an initial adjudication. Id. 

During the June 2009 Board hearing, the undersigned VLJ heard the Veteran's and appellant's testimony as to the issue of service connection for diabetes mellitus. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) requires that the Veterans Law Judge who chairs a hearing fulfill two duties to comply with the above regulation. These duties consist of (1) the duty to fully explain the issues, and (2) the duty to suggest the submission of evidence that may have been overlooked. In this case, during the June 2009 Board hearing, the undersigned VLJ asked questions to help direct testimony regarding the claimed in-service exposure to herbicides and suggested that evidence be obtained regarding such exposures and a relationship between the diabetes and the claimed exposures; thus, the Board concludes that VA has satisfied its duty to notify the appellant.

VA has also made reasonable efforts to obtain relevant records and evidence. Specifically, the information and evidence that has been associated with the claims file includes VA and private treatment records, a VHA medical opinion, lay statements and testimony, and various research articles submitted by the appellant.

As acknowledged in the Board's December 2012 decision, service treatment records are unavailable for review in this case. The RO previously requested service treatment records and personnel records from the National Personnel Records Center (NPRC). A December 2002 response shows that, after an extensive search of the records among their holdings, they were unable to locate those records. The NPRC concluded that the records either did not exist or that further efforts to locate them at the NPRC would be futile. In cases where a veteran's service treatment records are unavailable through no fault of his own, there is a "heightened duty" to assist in the development of the case. See O'Hare v. Derwinski, 1 Vet. App. 365 (1991); Cuevas v. Principi, 3 Vet. App. 542 (1992). 

This heightened duty includes the obligation to search for alternate medical records. See Moore v. Derwinski, 1 Vet. App. 401 (1991). The Board finds that VA has satisfied its duty to assist the appellant in the development of the case by attempting to verify the claimed in-service exposures through official sources, and by supplementing the record with alternate documents that could substitute for absent service records. While service treatment records are not available in this case, the appellant does not contend that the Veteran had any in-service treatment for symptoms or manifestations of diabetes mellitus, but instead contends that diabetes mellitus is related to in-service exposure to Agent Orange and other chemicals. For these reasons, the Board finds that the development of the case has been appropriately focused on an attempt to verify the claimed in-service exposures. 

A May 2009 memorandum from the U.S. Army and Joint Services Records Research Center (JSRRC) shows that a review of ships histories, deck logs, and other sources of information related to the Navy did not document or verify exposure to tactical herbicide agents aboard Navy ships during the Vietnam War Era. Pursuant to August 2009 and November 2011 Board remand directives, the Appeals Management Center (AMC) made additional attempts to verify through official sources the claimed exposure to herbicides and Silvex in service. VA sent a notice in November 2010 that VA was attempting to verify the claimed in-service Agent Orange exposure through the National Archives and Records Administration, the Naval History and Heritage command, and through Naval Personnel Records. The AMC requested copies of deck logs for the U.S.S. Kitty Hawk for the period from May 1964 to June 1964. Relevant ship histories were received from the Navy Textual Archives Services Divisions and were associated with the record. The AMC also attempted to corroborate the claimed exposure to herbicide agents at the San Diego Naval Base. A review of the Department of Defense (DOD) list of sites associated with herbicide use or testing did not show any use, testing, or storage of tactical herbicides, such as Agent Orange, at any location in San Diego, California.

The AMC also requested information from the Naval History and Heritage Command and the Naval Sea Systems Command regarding documentation related to the desalination process used aboard the U.S.S. Kitty Hawk, to include an inquiry about what chemicals were involved aboard the ship. A July 2011 letter from VA informed of the negative responses received and that the Veteran could obtain and submit any such record directly to VA. The AMC received correspondence in August 2011 from the Naval Sea Systems Command, Surface Ship Water Systems Engineering Manager, regarding chemicals used in distillation process aboard the U.S.S. Kitty Hawk. The AMC also received a memorandum from the Naval Sea Systems Command showing that one document pertaining to the U.S.S. Kitty Hawk and Distilling Plants was found, and this document was associated with the claims file. In a June 2012 telephone correspondence, the AMC informed the appellant of the negative responses received from the Naval Sea Systems Command. The appellant stated that all information regarding the case had already been sent in, and denied having any other information to send. 

Further, pursuant to the Board's May 2014 remand directives, the RO attempted to verify the claimed in-service exposure to commercial herbicides, including Dalapon, while stationed at the San Diego Naval Base; however, in an October 2016 letter, the Commanding Officer of the San Diego Naval Base indicated that no records could be located as to whether the base used commercial herbicides during the 1960s. Although the use of commercial herbicides at the San Diego Naval Base could not be verified, the Board nonetheless requested a VHA expert opinion in June 2017. The Board requested that the VHA expert to assume as true that the Veteran was exposed to commercial herbicides during service, including Dalapon, and to provide an opinion as to whether the Veteran's diabetes mellitus might have been related to such exposure.

Based on the foregoing, the Board finds that development completed in this case is adequate, that VA has complied with procedures for determining whether the Veteran was exposed to herbicides in a vicinity other than the Republic of Vietnam as delineated in VA's Adjudication Procedure Manual, M21-1MR, Part IV, Subpart ii, Chapter 2, Section C., para 10(o), and that VA's attempts to verify the claimed in-service exposure to both tactical and commercial herbicides are adequate.

Next, VA satisfied its duty to obtain a medical opinion when required. See 38 U.S.C. § 5103A; 38 C.F.R. §§ 3.159(c)(4), 3.326(a); McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006). As discussed above, in June 2017, the Board sought and obtained a VHA expert opinion on the question of whether the Veteran's diabetes mellitus was related to the claimed in-service exposure to commercial herbicides. When VA undertakes to provide an examination or obtain an opinion, it must ensure that the examination or opinion is adequate. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the December 2017 VHA expert opinion, taken in light of the other lay and medical evidence of record, is thorough and adequate and provides a sound basis upon which to base a decision with regard to the issue on appeal. The VHA expert reviewed the claims file and offered an opinion with supporting rationale. 

In light of the foregoing, the Board finds that all relevant facts have been properly and sufficiently developed in this appeal, and no further development is required to comply with the duty to assist in developing the facts pertinent to the appeal.



Service Connection for Diabetes Mellitus Type II

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). Service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Prior to his death, the Veteran was diagnosed with diabetes mellitus, which is listed as a "chronic disease" under 38 C.F.R. § 3.309(a); therefore, the presumptive provisions of 38 C.F.R. § 3.303(b) for "chronic" in-service symptoms and "continuous" post-service symptoms apply. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Where the evidence shows a "chronic disease" in service or "continuity of symptoms" after service, the disease shall be presumed to have been incurred in service. For the showing of "chronic" disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. With chronic disease as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected, unless clearly attributable to intercurrent causes. If a condition noted during service is not shown to be chronic, then generally, a showing of "continuity of symptoms" after service is required for service connection. 38 C.F.R. § 3.303(b).

Additionally, where a veteran served ninety days or more of active service, and certain chronic diseases, such as diabetes mellitus, become manifest to a degree of 10 percent or more within one year after the date of separation from such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time. Id.

Service connection may also be granted on a presumptive basis for certain diseases associated with exposure to certain herbicide agents, even though there is no record of such disease during service, if they manifest to a compensable degree any time after service, in a veteran who had active military, naval, or air service for at least 90 days, during the period beginning on January 9, 1962 and ending on May 7, 1975, in the Republic of Vietnam (Vietnam), including the waters offshore, and other locations if the conditions of service involved duty or visitation in Vietnam. 38 U.S.C. § 1116 (2012); 38 C.F.R. §§ 3.307, 3.309(e), 3.313 (2017). This presumption may be rebutted by affirmative evidence to the contrary. 38 U.S.C. § 1113 (2012); 38 C.F.R. §§ 3.307, 3.309. 

In order to establish qualifying "service in Vietnam," the evidence must demonstrate actual duty or visitation in the Republic of Vietnam. 38 C.F.R. 
§ 3.307(a)(6)(iii); VAOPGCPREC 27-97. The presumption of herbicide exposure is warranted for service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam; however, being stationed on a ship off the coast of Vietnam, not in a harbor surrounded by land, and earning the Vietnam Service Medal do not constitute duty or visitation in Vietnam. 38 C.F.R. § 3.307(a)(6)(iii); see also Haas v. Nicholson, 20 Vet. App. 257 (2006), rev'd sub nom, Haas v. Peake, 525 F.3d 1168 (Fed. Cir. 2008), cert. denied, 77 U.S.L.W. 3267 (Jan. 21, 2009) (No. 08-525). 

Service on a deep-water naval vessel off the shores of Vietnam has traditionally been not considered service in the Republic of Vietnam for purposes of 38 U.S.C.A. § 101(29)(A). 38 C.F.R. § 3.307(a)(6)(iii); VAOPGCPREC 27-97. The evidence had to demonstrate actual duty or visitation in the Republic of Vietnam to have qualifying service. Id. Since issuance of that General Counsel opinion, VA reiterated its position that service in deep-water naval vessels offshore of Vietnam (as opposed to service aboard vessels in inland waterways of Vietnam) is not included as "service in the Republic of Vietnam" for purposes of presumptive service connection for diseases associated with herbicide agent exposure. 66 Fed. Reg. 23166 (May 8, 2001).

Despite the foregoing, it has been established that some offshore U.S. Navy and Coast Guard ships also operated temporarily on Vietnam's inland waterways or docked to the shore; and certain ships operated primarily on the inland waterways rather than offshore. Veterans who served aboard these ships qualify for the presumption of herbicide exposure. Although operations on the inland waterways of Vietnam were primarily conducted by Brown Water Navy and Coast Guard vessels, some larger Blue Water Navy vessels periodically entered the inland waterways to provide gunfire support or deliver troops or destroyers that entered a river such as the Saigon River in the southern delta area. A number of Blue Water Navy amphibious assault and supply vessels also periodically entered inland waterways to deliver troops for combat missions or supplies for units stationed on the rivers. See Training Letter 10-06, Adjudicating Disability Claims Based on Herbicide Exposure from U.S. Navy and Coast Guard Veterans of the Vietnam Era, Sept. 9, 2010 (letter issued by VA Compensation and Pension (C&P) Service).

While VA policy previously expressly excluded veterans who served in Blue Water Navy anchored in open deep-water harbors including Cam Ranh Bay, Vung Tau Harbor, and Da Nang Harbor from the presumption of herbicide exposure (see Training Letter 10-06), in Gray v. McDonald, 27 Vet. App. 313 (2015), the Court held that this manner in which VA defined inland waterways was (1) inconsistent with the regulatory purpose of providing compensation to veterans based on the likelihood of exposure to herbicides and (2) irrational because it was an arbitrary exercise in line-drawing. The Court in Gray noted that VA had designated certain harbors, including Da Nang Harbor, as Blue Water based on ease of entry despite a lack of discernable relationship between ease of entry or depth and the probability of exposure based on herbicide use. Id. at 323. The Court further noted that VA's rigid line-drawing in Da Nang Harbor contrasted markedly with the approach VA has previously taken with regard to mouths of rivers. Id. at 325 (citing Training Letter 10-06 explaining that "evidence of the vessel's presence in a river's mouth is sufficient to establish the presumption of exposure for [v]eterans aboard that ship"). 

The Court in Gray held that VA's inconsistent application of the presumption of herbicide exposure to waterways that open to the ocean was arbitrary and relied on factors unrelated to the regulation. The Court remanded the matter for VA to reevaluate its definition of inland waterways, particularly as it applies to Da Nang Harbor, and "exercise its fair and considered judgment to define inland waterways in a manner consistent with the regulation's emphasis on the probability of exposure." Id. at 327. 

The following diseases are deemed associated with herbicide exposure under VA law: AL amyloidosis, Chloracne or other acneform disease consistent with chloracne, Type 2 diabetes (also known as Type II diabetes mellitus or adult-onset diabetes), Hodgkin's disease, Ischemic heart disease (including, but not limited to, acute, subacute, and old myocardial infarction; atherosclerotic cardiovascular disease including coronary artery disease (including coronary spasm) and coronary bypass surgery; and stable, unstable and Prinzmetal's angina), all chronic B-cell leukemias (including, but not limited to, hairy-cell leukemia and chronic lymphocytic leukemia), Multiple myeloma, Non-Hodgkin's lymphoma, Parkinson's disease, early onset peripheral neuropathy, Porphyria cutanea tarda, Prostate cancer, Respiratory cancers (cancer of the lung, bronchus, larynx, or trachea), and Soft-tissue sarcoma (other than osteosarcoma, chondrosarcoma, Kaposi's sarcoma, or mesothelioma). 38 C.F.R. § 3.309(e). Accordingly, diabetes mellitus is a disease for which presumptive service connection based on exposure to herbicides may be granted. Id. 

Notwithstanding the foregoing presumption provisions for herbicide exposure, a claimant is not precluded from establishing service connection with proof of direct causation. Combee v. Brown, 34 F.3d 1039, 1042 (Fed. Cir. 1994); see also Ramey v. Gober, 120 F.3d 1239, 1247-48 (Fed. Cir. 1997), aff'g Ramey v. Brown, 9 Vet. App. 40 (1996); Brock v. Brown, 10 Vet. App. 155, 160-61 (1997).

The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by, or obtained on behalf of, the appellant be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000); Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Throughout the course of this appeal, the appellant has contended that the Veteran was exposed to tactical herbicide agents, such as Agent Orange, while serving aboard the U.S.S. Kitty Hawk through run off from the coast of Vietnam, the drift of airborne spray, or exposure to aircraft which flew into Vietnam. See August 2011 statement. Alternatively, the appellant asserts that the Veteran was exposed to Silvex that was used in fresh water tanks to kill algae and/or commercial herbicide agents such as Dalapon while stationed at the San Diego Naval Base; the appellant alleges that such exposures resulted in the development of the Veteran's diabetes mellitus. See June 2009 Board hearing transcript; October 2011 statement. The appellant has not asserted that the Veteran's ship was in a deep water harbor in Vietnam. 

Initially, the Board finds that, prior to death, the Veteran was diagnosed with diabetes mellitus. A February 2001 VA Agent Orange examination report reflects the Veteran was diagnosed with diabetes and reported first being diagnosed in 1993; private medical records indicate the Veteran was first diagnosed with diabetes mellitus in July 1994.

After a review of all the evidence, lay and medical, the Board finds that the weight of the evidence demonstrates that the Veteran did not have "service in the Republic of Vietnam," was not presumptively exposed to tactical herbicides during active service, and was not actually exposed to herbicides during service to warrant the presumption of service connection. See 38 C.F.R. § 3.307(a)(6)(iii); Haas, 525 F.3d 1168. The DD Form 214 reflects the Veteran was stationed aboard the U.S.S. Kitty Hawk.

As discussed in the Board's December 2012 decision, in May 2009, the JSRRC issued a Memorandum for Record subjected "Research Findings Regarding Navy and Coast Guard Ships During the Vietnam Era" which noted that "to date, the JSRRC has found no evidence that indicates Navy or Coast Guard ships transported tactical herbicides from the United States to the Republic of Vietnam or that ships operating off the coast of Vietnam used, stored, tested, or transported tactical herbicides." The memorandum further noted that the JSRRC could not document or verify that a shipboard veteran was exposed to tactical herbicides based on contact with aircraft that flew over Vietnam or equipment that was used in Vietnam. Additionally, the U.S.S. Kitty Hawk is not currently on the list of Navy ships associated with service in Vietnam (last updated April 2, 2018).

Official ship histories show that the U.S.S. Kitty Hawk was stationed off the coast of Vietnam from May 1964 to June 1964 in the South China Sea. The appellant also submitted a ship history, obtained from the internet, in which an October 1965 date indicated the U.S.S. Kitty Hawk again departed San Diego, California, for operations off the coast of Vietnam where it was stationed from November 1965 to May 1966; however, this occurred after the Veteran's August 1965 separation from service. The Board finds that the ship histories for the U.S.S. Kitty Hawk obtained from official sources and from the appellant do not support a finding for exposure to Agent Orange on a presumptive basis. Instead, relevant ship histories confirm that the Veteran had offshore, blue water service aboard the U.S.S. Kitty Hawk in the South China Sea from May 1964 to June 1964 without operations on inland waterways. 
 
The appellant contends that presumptive service connection is warranted because the Veteran had service offshore in the waters adjacent to Vietnam and was close enough to the shoreline to see the trees and combat activity on shore. VA regulations provide, however, that service on a deep-water naval vessel off the shores of Vietnam may not be considered service in the Republic of Vietnam for purposes of 38 U.S.C. § 101(29)(A). See VAOPGCPREC 27-97; 38 C.F.R. 
§ 3.307(a)(6)(iii); Haas, 525 F.3d 1168. Based on the above, the Board finds that the U.S.S. Kitty Hawk did not conduct operations on inland waterways in Vietnam from May 1964 to June 1964. Additionally, the May 2009 JSRRC memorandum shows that exposure to tactical herbicides based on contact with aircraft has not been confirmed for the purposes of establishing exposure to Agent Orange in service. 

Moreover, the appellant does not contend that the Veteran went ashore in Vietnam during service. During the June 2009 Board hearing, the Veteran specifically testified that he did not go ashore in Vietnam and did not have any in-country service. In light of the requirement that a veteran must have been physically present on the landmass or inland waters of the Republic of Vietnam at some point during service in order to establish qualifying service in Vietnam, the Board finds that the Veteran was not presumptively exposed to a tactical herbicide agent in service. See 38 U.S.C. § 1116(f); 38 C.F.R. § 3.307(a)(6)(iii). 

After reviewing all the lay and medical evidence, including the Veteran's statements and testimony asserting exposure to herbicides in service, the Board finds that the weight of the evidence demonstrates that the Veteran did not have actual exposure to an herbicide agent in service. The appellant asserts the Veteran was exposed to Agent Orange while stationed at the San Diego Naval Base and witnessed Agent Orange being sprayed at the Naval Base for weed control; however, the San Diego Naval Base is not amongst the locations outside of Vietnam identified by the Department of Defense where herbicides were tested or stored. Absent qualifying service in Vietnam, either credible evidence of herbicide exposure or corroborating evidence of actual exposure to herbicides in service, the Board finds that there is no basis for presumptive service connection due to herbicide exposure. See 38 U.S.C. § 1116(f); 38 C.F.R. § 3.307(a)(6)(iii). 

The Veteran may also establish service connection for a diagnosed disability with proof of direct causation. See Combee, at 104. As discussed in depth in the Board's December 2012 decision, the appellant alternatively asserts that the Veteran was exposed to the herbicide Silvex aboard the U.S.S. Kitty Hawk, which was used in fresh water tanks to kill algae, and that exposure to herbicide agents also occurred through the potable water aboard the ship as the water desalination process did not remove herbicides from contaminated water. In support thereof, the appellant submitted various research articles; however, a review of these articles shows that they do not sufficiently address the facts of this particular case and do not support the proposition for which they are offered. The appellant has submitted an article addressing levels of TCDD (Dioxin) in Vietnam; however, the article assesses Dioxin levels of fish collected from the interior waters of Vietnam and on the seacoast of Can Goi. The Veteran was not located in the interior waters of Vietnam or on the seacoast of Can Goi. The appellant submitted an article with respect to Agent Orange contamination at Da Nang Airbase, Vietnam; however, the Veteran was never located at the Da Nang Airbase in Vietnam.

The appellant also submitted articles indicating that Dioxin exposure on Navy ships via drinking water "may have been substantial" and that pesticides and industrial organic chemicals "may be difficult to remove" by distillation/condensation. While these articles provide some general support for the appellant's contention that the Veteran may have had exposure to chemical agents, to include Dioxin, through the water used aboard his ship, the Board finds that the conclusions made in these articles as described above are speculative and, in the context of other evidence in this case, are insufficient to establish the Veteran's actual exposure Agent Orange in service while aboard the U.S.S. Kitty Hawk. See Sacks v. West, 11 Vet. App. 314 (1998); Beausoleil v. Brown, 8 Vet. App. 459 (1996). 

Further, the Board finds that the weight of the evidence demonstrates that the Veteran was not actually exposed to Silvex in service, which is a non-tactical herbicide agent used during the Vietnam War Era. Research conducted by the Naval Sea Systems Command shows that Silvex was not used in the distilling plants onboard the U.S.S. Kitty Hawk. An August 2011 response from the Naval Sea Systems Command, Surface Ship Water Systems Engineering Manager, shows that distillation plants aboard the ship used minimal chemicals, and that chemicals, such as Ameroyl, were used for scale prevention; however, herbicides were not used as part of the distillation process. The Naval Sea Systems Command stated that the only other chemical used in treatment of distillate was bromine or chlorine in trace amounts to assure proper disinfection of potable water supplies. One document pertaining to the U.S.S. Kitty Hawk and Distilling Plants was associated with the claims file. Required materials in the distilling plants chemical clean and repair aboard the U.S.S. Kitty Hawk were listed; however, the use of Silvex was not indicated. The Board finds that research conducted by the Naval Sea Systems Command weighs against the appellant's assertions of exposure to Silvex in the water distillation system aboard the U.S.S. Kitty Hawk. As such, the Board finds that the appellant's lay assertions as to such exposure are outweighed by other evidence as the appellant does not have actual knowledge of the distillation process used aboard the U.S.S. Kitty Hawk when it was stationed off the coast of Vietnam in 1964, and objective findings and reporting from official sources weight against such assertions. For these reasons, the Board finds that the evidence does not demonstrate that the Veteran was exposed to Silvex during military service. See Bardwell, 24 Vet. App. at 40. 
 
With regard to the appellant's contention that the Veteran was exposed to commercial herbicides, including Dalapon, while stationed at the San Diego Naval Base, the Commanding Officer of the San Diego Naval Base wrote in an October 2016 letter that no records could be located as to whether the base used commercial herbicides during the 1960s. Because the appellant had previously submitted articles indicating that commercial herbicides, including Dalapon, had been used on naval bases in southern California during the timeframe when the Veteran had been stationed at the San Diego Naval Base (from August 1963 to October 1963, from July 1964 to August 1964, and from May 1965 to August 1965), the Board finds that the evidence is at least in equipoise as to whether the Veteran had some level of commercial herbicide exposure during active service; however, the presumption for service connection for disease associated with exposure to certain herbicide agents does not apply to the use of commercial herbicide agents, pesticides, or other chemicals. 38 C.F.R. § 3.307(a)(6) provides that the term "herbicide agent" means a chemical in an herbicide used in support of the United States and allied military operations in the Republic of Vietnam, and lists the specific chemical agents at issue. For these reasons, the Board finds that Dalapon is not a qualifying herbicide agent within the meaning of 38 C.F.R. § 3.307 for the presumption of service connection.

Notwithstanding the above, in June 2017, the Board requested a VHA expert's opinion as to whether the Veteran's diabetes mellitus was etiologically related to the in-service exposure to commercial herbicides, including Dalapon. In September 2017, the requested VHA medical opinion was provided, wherein the VHA expert opined that it is less likely than not that the Veteran's diabetes was related to the in-service exposure to commercial herbicides as there are no known risks of developing diabetes associated with exposure to such commercial herbicides, including Dalapon. Further, the VHA expert explained that, although it is not possible to discern the most likely etiology of the Veteran's diabetes, it is not unusual for individuals to develop diabetes mellitus type II where clear cut risk factors are not seen.

The favorable evidence of record includes a November 2016 private medical opinion, wherein Dr. M.B. stated that the Veteran's diabetes was related to the Veteran's exposure to Agent Orange during miliary service as Agent Orange is known to cause health conditions such as diabetes; however, Dr. M.B.'s medical opinion is premised on an inaccurate factual premise that the Veteran was actually exposed to Agent Orange during service, as discussed above. Accordingly, as the Board has already found that the Veteran was not in fact exposed to tactical herbicide agents such as Agent Orange during service, the Board also finds that Dr. M.B.'s November 2016 medical opinion relying on that materially inaccurate fact is of no probative value. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993) (holding that an opinion based upon an inaccurate factual premise has no probative value). 

Another private medical opinion was received in December 2017, in which Dr. J.O. opined that the Veteran's diabetes was more likely than not related to exposure to Agent Orange and other herbicide agents at multiple locations during active service. Dr. J.O. also opined that the Veteran's diabetes was more likely related to in-service exposure to commercial herbicides. Similar to Dr. M.B.'s November 2016 medical opinion, Dr. J.O.'s December 2017 opinion was based on the inaccurate factual premise that the Veteran was actually exposed to tactical herbicide agents such as Agent Orange during service. Furthermore, Dr. J.O. did not provide a rationale for the opinion that the Veteran's diabetes was more likely related to in-service exposure to commercial herbicides. As such, the Board finds that Dr. J.O.'s December 2017 medical opinion is of no probative value on the question of whether the Veteran's diabetes was etiologically related to in-service exposure to commercial herbicides. See Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) (finding that a medical opinion "must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions"); Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 301 (2008) (requiring medical examiners to provide a "reasoned medical explanation connecting" observations and conclusions); Reonal, 5 Vet. App. at 461.

Next, the Board finds that the Veteran did not have chronic symptoms of diabetes mellitus in service, or continuous symptoms of diabetes mellitus after separation from service. Instead, VA and private treatment records show that diabetes mellitus was first diagnosed in 1994, approximately 29 years after the Veteran's separation from service. During the June 2009 Board hearing, the Veteran testified that he was never treated for diabetes in service. Private treatment records show that the Veteran was hospitalized in July 1994 for approximately one week for hyperglycemia, and at that time he was diagnosed with new onset insulin diabetes mellitus. 

Treatment records related to the 1994 hospitalization are not of record; thus, the circumstances surrounding the July 1994 hypoglycemic reaction 29 years after service separation are not clear; however, the Veteran testified during the June 2009 Board hearing that this hypoglycemic reaction occurred after undergoing knee surgery, and that it was of a sudden onset. Such evidence reflects a history of onset 29 years after service separation and even suggests a post-service etiology for the onset. The appellant testified that there was evidence of ketosis at the time of the hospitalization in 1994. For these reasons, the Board finds that diabetes first had its onset in July 1994, that symptoms of diabetes mellitus were not chronic in service and were not continuous after service separation, and symptoms of diabetes mellitus did not manifest to a compensable degree within one year of separation from service.

The Board has considered the appellant's testimony during the June 2009 Board hearing that she was a registered nurse; however, in light of the Board's finding that the Veteran was not exposed to Agent Orange or Silvex during service, the Board finds that the appellant's testimony that attempts to establish a nexus between such exposure and the Veteran's diabetes is not probative. Medical opinions premised upon an unsubstantiated account of a claimant are of no probative value and does not serve to verify the occurrences described. See Swann v. Brown, 5 Vet. App. 229, 233 (1993); Reonal, 5 Vet. App. at 461. Furthermore, although the Board has found the Veteran was exposed to some level of commercial herbicides, including Dalapon, during service, the Board nonetheless finds the appellant's testimony during the June 2009 Board hearing is of no probative value in establishing a nexus between exposure to commercial herbicides and the Veteran's diabetes. While the appellant previously worked as a registered nurse and, thus, has some general medical knowledge, she does not have the requisite medical expertise, training, or experience to be able to provide an opinion on medically complex endocrine disorders and the effects of chemical exposure on the body's internal system processes, or on a causal relationship that might exist between exposure to various chemical compounds and the development of diabetes mellitus type II. The appellant has not been shown to have such knowledge, training, or experience.

For the foregoing reasons, the Board finds that a preponderance of the evidence is against the claim for service connection for diabetes mellitus on a direct, 

presumptive, or any other basis, and the claim must be denied. Because the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102.


ORDER

Service connection for diabetes mellitus type II, including as due to herbicide exposure, is denied.





____________________________________________
J. PARKER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs